J. CHRISTOPHER JACZKO (SBN 149317)
JACOB K. POORMAN (SBN 262261)
PROCOPIO CORY HARGREAVES & SAVITCH LLP
12544 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone: (858) 720-6300
Facsimile: (619) 744-5418
Email: *chris.jaczko@procopio.com*
Email: *jacob.poorman@procopio.com*

DAVID A. PERKINS (SBN 131683)
PACIFIC STEEL GROUP
4805 Murphy Canyon Road
San Diego, CA 92123
Telephone: (858) 251-1100
Email: *dperkins@pacificsteelgroup.com*

*Attorneys for Plaintiff*
PACIFIC STEEL GROUP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC STEEL GROUP, a California corporation,<br><br>                Plaintiff,<br><br>v.<br><br>C M C STEEL FABRICATORS, INC. dba CMC REBAR, a Texas corporation; CMC STEEL US, LLC, a Delaware limited liability company; CMC REBAR WEST, a Delaware general partnership; and DOES 1 through 10 inclusive.<br><br>                Defendants. | Case No. 3:22-cv-00892-L-DEB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1) **VIOLATION OF CALIFORNIA UNFAIR PRACTICES ACT, CAL. BUS. & PROF. CODE § 17043;**<br><br>2) **VIOLATION OF CALIFORNIA UNFAIR PRACTICES ACT, CAL. BUS. & PROF. CODE § 17044; AND**<br><br>3) **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

6046673.7

Plaintiff Pacific Steel Group ("Pacific Steel" or "Plaintiff") files this Complaint for permanent injunctive relief and damages or restitution against Defendants CMC Steel Fabricators, Inc. d/b/a CMC Rebar ("CMC Rebar"), CMC Steel US, LLC ("CMC Steel US") and CMC Rebar West ("CMC Rebar West") (collectively, "Defendants") for violations of California unfair business practices act and unfair competition law and alleges as follows:

## INTRODUCTION

1.      This case is brought to remedy injuries to competition in the rebar industry as well as to Pacific Steel caused by the unconscionable, unfair and illegal conduct of CMC Rebar, a subsidiary of the multi-billion dollar, multi-national steel conglomerate Commercial Metals Company ("CMC") which—through both its own conduct and that of Gerdau Reinforcing Steel ("GRS"[1])  (whose equity CMC purchased through its subsidiaries CMC Rebar and CMC Steel US)—has for years priced its rebar Furnish-and-Install services below cost in an effort to harm competition and minimize Pacific Steel's growth, profitability, effectiveness, and efficiency.  The result of  Defendants' unlawful conduct has been and/or will be the suppression of competition and damage to Pacific Steel's business.

2.      Pacific Steel is a San Diego-based rebar subcontractor founded in late 2014.  In response to Pacific Steel's entry into the rebar Furnish-and-Install market, CMC Rebar and GRS began frequently offering their rebar Furnish-and-Install services below cost in order to stifle Pacific Steel's growth and profitability and to prevent Pacific Steel from achieving economies of scale, further investing in more efficient and effective operations, and becoming an even stronger competitor in the Furnish-and-Install market.

---

[1] As alleged hereinbelow, GRS is now known as CMC Rebar West.

6046673.7

22-cv-00892

**PARTIES**

3.      Plaintiff Pacific Steel is a California corporation incorporated on October 9, 2014, with its principal place of business in San Diego, California. Pacific Steel fabricates (or "furnishes") and installs rebar based on structural engineers' commercial construction plans using standard lengths of rebar purchased from steel mills.  Pacific Steel was formed by a team of seasoned industry professionals who previously worked at Pacific Coast Steel, a California corporation which sold a controlling interest to Gerdau Ameristeel Corporation in 2006 and transferred full ownership to that entity in 2011.  Pacific Steel purchases rebar from manufacturers like CMC and its various steel mill divisions/subsidiaries. Pacific Steel competes with CMC and its various Furnish-and-Install subsidiaries, including Defendants CMC Rebar, CMC Steel US and CMC Rebar West in the rebar Furnish-and-Install market.

4.      Although not named herein as a defendant, for purposed of background and clarity, CMC is a Delaware corporation founded in 1915 with its principal place of business in Irving, Texas.  CMC is publicly traded on the New York Stock Exchange under the symbol "CMC" and is a component of the S&P 400.  CMC is the largest manufacturer and among the largest fabricators of rebar in the United States.  CMC currently operates nine rebar manufacturing mills and 62 fabrication facilities throughout the United States and is by far the largest rebar manufacturer in the United States. CMC is the parent company of Defendants CMC Rebar, CMC Steel US, LLC, and CMC Rebar West and together with these wholly-owned subsidiaries collectively comprise the largest supplier of rebar Furnish-and-Install services in the United States.

5.      Defendant CMC Rebar is a Texas corporation with its principal place of business in Seguin, Texas, and with offices throughout the country, including in California.  CMC Rebar is a competitor of Pacific Steel in the rebar Furnish-and-Install markets.  CMC Rebar is a wholly-owned subsidiary of CMC and touts itself

2

as the nation's leading rebar fabricator. As alleged hereinbelow, on information and belief, CMC Rebar is a general partner in Defendant CMC Rebar West.

6.    Defendant CMC Steel US is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Irving, Texas.  CMC Steel US is wholly-owned by CMC and, either directly or through its affiliates, manufactures and markets rebar and provides related services. On information and belief, CMC Steel US is a general partner in Defendant CMC Rebar West.

7.    Defendant CMC Rebar West is a Delaware general partnership with its principal place of business in San Diego, California. CMC Rebar West competes with Pacific Steel in the Furnish-and-Install market and is the successor to GRS. Until in or around 2019, the general partners of GRS were Gerdau Ameristeel US Inc. and Gerdau Ameristeel WC, Inc.  In 2018, Defendants CMC Rebar and CMC Steel US acquired the partnership interests of the two general partners Gerdau Ameristeel US Inc. and Gerdau Ameristeel WC, Inc.  and changed the partnership name from GRS to CMC Rebar West in 2019.  On information and belief, on or around January 1, 2021, CMC Rebar West merged into Defendant CMC Rebar.  As the successor-in-interest, CMC Rebar is liable for the below-cost pricing of GRS and CMC Rebar West as alleged below.

8.    Whenever this Complaint refers to an act, deed, or transaction of any business entity, the allegation means that the business entity engaged in that act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## RELATION BACK TO PRIOR FEDERAL COURT COMPLAINT

9.    The causes of action asserted herein were the subject of a federal court action filed on October 30, 2020, and entitled *Pacific Steel Group v. Commercial Metals Company, et al.,* United States District Court for the Northern District of

3

22-cv-00892

California, Case No. 20-cv-07683-HSG. The court entered an order on April 26, 2022, declining to rule on the state court matters asserted herein for lack of supplemental jurisdiction and ordering the same dismissed without prejudice. This complaint and the claims asserted herein are entitled to relate back to the October 30, 2020 filing date of the federal court action for purposes of any applicable statute of limitations because they rest on the same general set of facts, refer to the same accident and injuries and refer to the same instrumentality as the complaint filed in the federal court action.

## JURISDICTION AND VENUE

10.     This court has personal jurisdiction over the Defendants, and each of them, because Defendants maintain sufficient minimum contacts with the State of California by virtue of maintaining a physical presence and/or conducting business in this State and the causes of action for violations of California's Unfair Practices Act and Unfair Competition Law arise out of Defendants' minimum contacts and unlawful and unfair activities conducted within this State. Further, defendants, and each of them, consented to the court's exercise of personal jurisdiction by removing this action to this court from the San Diego County Superior Court.

11.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between the parties and the amount in controversy is in excess of the jurisdictional minimum of $75,000, exclusive of interest and costs.

12.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b) because Plaintiff's principal place of business is located in this judicial district, Defendants CMC Rebar and CMC Rebar West maintain an office in this judicial district, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the harm suffered by Plaintiff as a result of Defendants' unconscionable, unfair and illegal conduct has occurred, at least in part, in this judicial district.

6046673.7

22-cv-00892

# FACTUAL ALLEGATIONS

## I.    The Rebar Industry

13.     Steel reinforcing bar or "rebar" is a steel bar used to reinforce concrete or masonry structures and add tensile strength.  The most common type of rebar is carbon steel or "black rebar" which consists of hot-rolled round bars with heavy ridges or deformation patterns that assist in binding to the concrete or masonry. Coatings such as epoxy resin may also be applied to prevent corrosion in saltwater environments.

14.     Domestic rebar is typically manufactured to meet American Society for Testing and Materials ("ASTM") standards and sold in industry-standard sizes, lengths, and grades throughout the United States.

15.     Domestic rebar sizes are expressed in imperial units corresponding to the diameter of the bar in increments of 1/8 of an inch.  For example, "#3" size rebar has a diameter of 3/8 of an inch.  Standard rebar sizes typically range from #3 (3/8 of an inch in diameter) to #18 (18/8 or 2.26 inches in diameter).

16.     Domestic rebar is typically sold in standard straight lengths of 20, 30, 40, or 60 feet, as well as in coils.

17.     Domestic rebar is graded with designations expressed using the minimum yield strength of the bar in thousands of pounds per inch ("ksi" or "1000 psi").  For example, grade 60 rebar—the most common grade used in modern U.S. construction—has a minimum yield strength of 60 thousand pounds per inch.  The most commonly manufactured grades in the U.S. are 60 and 75, although higher strength grades including 80 and 100 are also available.

18.     The weight of rebar depends primarily on its diameter and length, ranging from approximately 0.4 pounds per linear foot for #3 rebar to 13.6 pounds per linear foot for #18 rebar.

19.     The domestic rebar manufacturing markets are highly concentrated. The two largest suppliers, CMC and Nucor, currently account for 80% of rebar

5

22-cv-00892

production nationally. *See* Fastmarkets AMM, "*CMC-Gerdau deal done; market impact murky,*" by Patrick Fitzgerald (Nov. 5, 2018). As CMC noted in its 2020 Form 10-K filed with the Securities & Exchange Commission, "[w]e produce a significant percentage of the total U.S. output of rebar and merchant bar. We also believe we are the largest manufacturer, and among the largest fabricators, of rebar in the U.S." CMC, Annual Report (Form 10-K) (Oct. 15, 2020), at 5.

20.    Although rebar consumption dropped nationally in the immediate aftermath of the 2007-2008 financial crisis, rebar consumption in the United States—including in the West and California in particular—has since rebounded, with strong demand in recent years. *See* Concrete Reinforcing Steel Inst., *Domestic Reinforcing Bar Consumption* (June 2020).

21.    Before it can be installed in construction projects to reinforce concrete, rebar must be cut and shaped according to a structural engineer's drawings or plans. Such drawings often include an armature of bent and connected rebar that must be carefully manipulated by trained professionals called "fabricators."

22.    Since bending steel can alter its strength, this work must be performed very carefully by skilled, experienced steelworkers in order to, among other things, meet code requirements and avoid failure. Once created, another team of skilled professionals installs the furnished rebar edifice on site.

23.    Thus, fabricators (*e.g.*, Pacific Steel and CMC Rebar) purchase stock rebar from manufacturers (*e.g.*, CMC), cut and bend the rebar at a fabrication plant per the structural engineer's plans, and then deliver and install the fabricated rebar in construction projects.

24.    Fabricators have large fixed costs including their fabrication plant and equipment. Thus, the closer to full capacity they can operate, the more efficient they are. The rebar that fabricators must purchase or produce internally makes up a substantial share of their variable costs. Thus, sourcing low-cost rebar is critical for fabricators being able to offer low prices and compete effectively.

6046673.7

22-cv-00892

25.    Some larger rebar entities—including CMC and its chief competitor, Nucor—are vertically integrated (*i.e.*, they own both steel mills and fabrication facilities, and they employ labor forces to furnish and install fabricated rebar).  Of the 4.4 million tons of steel shipped from CMC's mills in 2019, approximately 2.0 million tons were shipped to CMC's own fabrication facilities.

26.    CMC's wholly-owned Furnish-and-Install subsidiary, CMC Rebar, "is the nation's leading concrete reinforcing steel fabricator. . . ." *See Rebar Fabrication*, CMC, https://www.cmc.com/en-us/what-we-do/america/fabrication/rebar-fabrication (last visited May 11, 2022).  As of August 2020, CMC operated 67 steel fabrication facilities worldwide. *See* CMC *Annual Report* (Form 10-K) (Oct. 15, 2020), at 4, 18. Five of those fabrication facilities were in California and provide Furnish-and-Install services. *See id.*

27.    On information and belief, CMC was suffering losses and in an effort to hide its losses from analysts, several years ago CMC decided to consolidate the financial reporting of its west coast mills with their Furnish-and-Install business. By doing so, the high general and administrative costs of their Furnish-and-Install business was artificially blended with the low general and administrative costs of their mills. The general and administrative expenses attributed to the Furnish-and-Install business should be used to determine its profitability on sales made. On information and belief, the general and administrative expenses of the Furnish-and-Install business runs in excess of ten percent (10%). This allegation  is based on the knowledge of former management level employees of Defendants now employed by Plaintiff who have direct knowledge of such matters. By contrast, Plaintiff's general and administrative expenses are less than that of the Defendants.

## II.    Pacific Steel's Entry Into the Rebar Furnish-and-Install Markets and CMC's Response

28.    Pacific Steel was formed in late 2014 and is a "Furnish-and-Install" reinforcing steel subcontractor, meaning it purchases stock rebar from mills owned

7

22-cv-00892

by manufacturers, such as CMC, Nucor, and previously Gerdau, cuts and bends the rebar per a structural engineer's drawings, and then transports the fabricated rebar and installs it in construction projects using its team of union ironworkers.

29.    Pacific Steel was formed by seasoned steel industry professionals who previously worked at Pacific Coast Steel, a rebar company sold to Gerdau in 2006. Both CMC Rebar and GRS (now CMC Rebar West) viewed Pacific Steel as a potential market disrupter because of the quality and efficiency of its operations. Pacific Steel is a data driven company; that is, it regularly and timely collects and analyzes data from all aspects of its operations.  As a fabricator, it has an innovative shop set-up, sets high standards of performance, ensures appropriate engagement by leadership, and rewards success.  As an installer, Pacific Steel emphasizes pre-planning of work, sets high standards for performance, and rewards success.  Pacific Steel's innovative and efficient operations and its high performance standards yield superior performance and lower costs.

30.    Prior to Pacific Steel's entry into the market in late 2014, executives from Pacific Steel and Gerdau met, with Pacific Steel offering to purchase Gerdau's Furnish and Install operations on the west coast. Gerdau rebuffed the offer, stated that it did not want to see Pacific Steel establish a market presence and refused to sell steel to it.

31.    In response to Pacific Steel's entry into the market, CMC Rebar and GRS both began aggressively bidding Furnish-and-Install rebar projects in a targeted way to prevent Pacific Steel from gaining a foothold in the market.  These bids frequently were made below cost and served as loss leaders specifically designed and intended to divert projects away from Pacific Steel and prevent it from growing, achieving economies of scale, investing in even more efficient and effective operations, and gaining further efficiency and effectiveness as a competitor.  A former management level employee of Defendants with direct knowledge of CMC's bidding strategy has confirmed CMC's strategy consists of

8

22-cv-00892

bidding below its costs for Furnish-and-Install rebar projects in both Southern California and Northern California.  Another former CMC management level employee with direct knowledge of CMC's bidding strategy confirms that during the period beginning with Plaintiff's entry into the Furnish-and-Install market in 2014, Defendants CMC Rebar West (previously known as GRS) and CMC Rebar would often bid work at its direct cost of labor, material and other related work, with overhead and profit of three to five percent.  As this is less than Defendants' general and administrative expenses, such jobs were being bid/priced at an amount that is less than their total cost – meaning it was a loss leader. According to this former CMC management level employee, this bidding strategy was typically done by Defendants on the larger sized projects; whereas, on others, Defendants' typical overhead and profit included in the pricing was seven to 10 percent, meaning that these jobs were also priced lower than their cost.

32.     Because of these bidding practices, and despite a California construction boom and rising demand for rebar Furnish-and-Install services, CMC Rebar and GRS (including its successor, CMC Rebar West) have sustained heavy losses in their Furnish-and-Install businesses since at least 2017, due in large part to bidding below cost.  It has been reported to Plaintiff by a former CMC management level employee that these losses over the last five years exceed $10 million. Defendants' below-cost bidding has also slowed Pacific Steel's growth and depressed its profits considerably.

33.     Upon Plaintiff's entry into the Furnish-and-Install market, in addition to its below cost pricing practices, Gerdau refused to sell tons of steel from its mill to Pacific Steel. Several years later, and in 2017, and once Gerdau realized that Pacific Steel had gained sufficient market share to make it a relevant player in the market, it agreed to sell tons of steel from its Rancho Cucamonga, California steel mill to Pacific Steel. However, it continued with its below cost pricing.

34.     Officers and/or management level employees of Gerdau – some of

9

22-cv-00892

whom had previously worked with the owners of Pacific Steel – were upset by Pacific Steel's growth and commented to third parties that they would like to see Pacific Steel fail. In November 2018, Gerdau sold its Rancho Cucamonga steel mill and other assets to CMC. At least one of the aforementioned Gerdau officers began employment with CMC Rebar West in November 2018 as Director of Sales and continued in that position through August 31, 2021.

35.    Upon Plaintiff's entry into the Furnish and Install market, CMC agreed to sell steel to Pacific Steel. In 2015, CMC sold more than $3 million worth of steel to Pacific Steel. However, in 2016 and through late 2018, CMC refused to sell any meaningful tonnage to Pacific Steel stating that the "political climate" for such sales was not right – understood to be a reference to the success Pacific Steel was having in taking market share from CMC Rebar West (previously known as GRS) .  In 2018, Pacific Steel made a so-called "232-exemption request" to the Department of Commerce pursuant to Section 232 of the Trade Expansion Act of 1962, which, if granted, would have allowed Pacific Steel to purchase foreign made steel. CMC responded to Pacific Steel's 232 exemption request under penalty of perjury stating that it had domestic tonnage available to sell to Pacific Steel, though it actually did not. In the same time period, the proposed purchase by CMC of four steel mills from Gerdau was being scrutinized by the Department of Justice. In that process, Pacific Steel expressed its concern that CMC would have a dominant market position and would abuse its position by cutting off the sale of steel from the Gerdau Rancho Cucamonga plant. Thus, when the Gerdau-CMC acquisition was completed on or about November 5, 2018, CMC being cognizant of Department of Justice concerns, elected to sell a more meaningful quantity of mill produced steel to Plaintiff during 2019. However, once its acquisition of Gerdau was successfully behind it, in 2020 and thereafter, CMC returned to its prior stance of refusing to sell any meaningful tonnage to Pacific Steel. This decision was economically irrational in view of the fact that in 2019, Pacific Steel – in need of the CMC steel – allowed CMC to

6046673.7

22-cv-00892

unilaterally set the price for the tonnage purchased (as opposed to negotiating with CMC for better pricing as is customary in the industry). As to the sales to Pacific Steel, CMC's mill profit margins were thus enhanced as it would otherwise have "sold" steel to its downstream Furnish and Install business at a lesser price. CMC was further benefitted by the 2019 tons sold to Pacific Steel as its downstream, Furnish and Install entity – CMC Rebar West – had less tonnage to move and at a monetary loss. When confronted with the choice to continue sales to Pacific Steel in 2020 and thereafter at prices it could unilaterally set, thereby enjoying greater mill profits and lesser downstream losses, CMC nonetheless choose to effectively cut off sales to Pacific Steel consistent with Defendants' intent or purpose to harm competition and competitors such as Pacific Steel.

36.    Consistent with its bidding strategy as alleged hereinabove, on a number of projects Defendants bid a significant amount of work below cost. Attached hereto as Exhibit "A" and incorporated herein by this reference as though set forth in full is a spreadsheet evidencing examples of projects where CMC or Gerdau followed this practice. Exhibit "A" at p. 25.  This spreadsheet substantiates that between 2017 and the present, Defendants issued bids/pricing for approximately $140,000,000 worth of work where the costs exceeded their pricing by approximately $10,000,000. *Id.* (column "Loss Leader").  The information contained in Exhibit "A" is based on Pacific Steel's pricing of the same projects, and as shown on Exhibit "A" hereto at pages 26 through 28, includes the specific cost factors for necessary elements for each project including, for example, (1) materials, (2) labor, (3) wire mesh, (4) couplers/welding, (5) hoisting, and (6) miscellaneous items, such as post tension cable.  Defendants' records relating to its specific cost information and pricing models are not publicly available.  However, based on Plaintiff's substantial experience in the Furnish-and-Install market, as well as its own pricing for these projects, Plaintiff's costs can properly serve as a proxy for that of Defendants' in that the costs shown in Exhibit "A"  are reflective of the

prevailing prices in the California market where these projects took place and thus necessarily would be the same or essentially similar for Defendants absent the unlawful and unfair conduct alleged herein.  Based on this analysis, and given's Plaintiff's years of experience and expertise in the industry, Plaintiff is informed and believes and based thereon alleges that the total cost of the work and the cost of doing business (inclusive of general and administrative expenses) exceeds Defendants' associated price/bid for the work in question for each of the 20 jobs listed.

37.    Exhibit "A" lists projects bid/priced spanning a five-year period, a broad geographic area, and includes both small and large projects.  Exhibit "A" at p. 25. On information and belief, over this time period, Defendants priced work in excess of $5 billion. As such, Exhibit "A" represents a small sample of the total work priced by Defendants and, on information and belief, Plaintiff expects that Defendants' bid records will reveal many more projects similarly bid below cost.

38.    An example of one such job is the project at SFPUC Headworks Scope III in San Francisco, California. This job is listed on the table of the first page of Exhibit "A" as number 10 in the first column. Exhibit "A" at p. 25. CMC Rebar bid below its Furnish-and-Install costs in February 2019 to win the contract to install 2,807 tons of fabricated rebar in this project.  Pacific Steel's bid for the project was $6,152,064, which was sufficient to cover its costs, including overhead, and allowed for a modest net profit.  CMC Rebar's bid came in significantly lower than the competition at $5,536,858.  On information and belief, CMC Rebar bid this project below its costs. Plaintiff is an experienced Furnish-and-Install reinforcing steel subcontractor. For this project, Plaintiff performed a detailed review of the plans and specifications allowing it to determine the total weight of steel to be installed thereon. Plaintiff further analyzed the costs components necessarily associated with the work on the project. Such costs include the labor to install the steel, the material required and related costs such as detailing, and trucking which would necessarily

be incurred by any supplier providing Furnish-and-Install services for the project. Exhibit "A" at p. 27, # 10. Based on this analysis, and given's Plaintiff's years of experience and expertise in the industry, and on information and belief, the cost of the work and the cost of doing business (inclusive of general and administrative expenses) would total $5,991,791, which is $454,934 higher than the price bid by Defendants, meaning Defendants' price is less than its costs.

39.    Another example of such a project is the Google Gibraltar Campus in Sunnyvale, California. This job is listed on the table of the first page of Exhibit "A" as number 11 in the first column. Exhibit "A" at p. 25. CMC Rebar bid below its Furnish-and-Install costs in August 2019 to win the contract to install 3,355 tons of fabricated rebar in this project.  Pacific Steel's bid for the project was $2,586,977, which was sufficient to cover its costs, including overhead, and allowed for a modest net profit.  CMC Rebar's bid came in significantly lower than the competition at $2,150,000.  On information and belief, CMC Rebar bid this project below its costs. Plaintiff is an experienced Furnish-and-Install reinforcing steel subcontractor. For this project, Plaintiff performed a detailed review of the plans and specifications allowing it to determine the total weight of steel to be installed thereon. Plaintiff further analyzed the costs components necessarily associated with the work on the project. Such costs include the labor to install the steel, the material required and related costs such as detailing, and trucking which would necessarily be incurred by any supplier providing Furnish-and-Install services for the project. Exhibit "A" at p. 27, # 11. Based on this analysis, and given's Plaintiff's years of experience and expertise in the industry, and on information and belief, the cost of the work and the cost of doing business (inclusive of general and administrative expenses) would total $2,438,883, which is $288,883 higher than the price bid by Defendants, meaning Defendants' price is less than its costs.

40.    Another example of such a project is 5M M2 in San Francisco, California. This job is listed on the table of the first page of Exhibit "A" as number

6046673.7

22-cv-00892

12 in the first column. Exhibit "A" at p. 25. CMC Rebar bid below its Furnish-and-Install costs in January 2020 to win the contract to install 2,046 tons of fabricated rebar in this project.  Pacific Steel's bid for the project was $5,483,946, which was sufficient to cover its costs, including overhead, and allowed for a modest net profit. CMC Rebar's bid came in significantly lower than the competition at $4,750,000. On information and belief, CMC Rebar bid this project below its costs. Plaintiff is an experienced Furnish-and-Install reinforcing steel subcontractor. For this project, Plaintiff performed a detailed review of the plans and specifications allowing it to determine the total weight of steel to be installed thereon. Plaintiff further analyzed the costs components necessarily associated with the work on the project. Such costs include the labor to install the steel, the material required and related costs such as detailing, and trucking which would necessarily be incurred by any supplier providing Furnish-and-Install services for the project. Exhibit "A" at p. 27, # 12. Based on this analysis, and given's Plaintiff's years of experience and expertise in the industry, and on information and belief, the cost of the work and the cost of doing business (inclusive of general and administrative expenses) would total $5,311,342, which is $561,342 higher than the price bid by Defendants, meaning Defendants' price is less than its costs.

41.    GRS (now CMC Rebar West) also engaged in the same conduct. For example, GRS bid below its Furnish-and-Install costs for the Hotel Del Coronado North Parking Structure.  This job is listed on the table of the first page of Exhibit "A" as number 7 in the first column. Exhibit "A" at p. 25.  GRS bid below its Furnish-and-Install costs in November 2018 to win the contract to install 1,035 tons of fabricated rebar in this project.  Pacific Steel's bid for the project was $2,237,162, which was sufficient to cover its costs, including overhead, and allowed for a modest net profit.  GRS' bid came in significantly lower than the competition at $2,068,000.  On information and belief, GRS bid this project below its costs. Plaintiff is an experienced Furnish-and-Install reinforcing steel subcontractor. For

14

this project, Plaintiff performed a detailed review of the plans and specifications allowing it to determine the total weight of steel to be installed thereon. Plaintiff further analyzed the costs components necessarily associated with the work on the project. Such costs include the labor to install the steel, the material required and related costs such as detailing, and trucking which would necessarily be incurred by any supplier providing Furnish-and-Install services for the project. Exhibit "A" at p. 26, # 7. Based on this analysis, and given's Plaintiff's years of experience and expertise in the industry, and on information and belief, the cost of the work and the cost of doing business (inclusive of general and administrative expenses) would total $2,151838, which is $83,839 higher than the price bid by GRS, meaning GRS' price is less than its costs.

42.    Plaintiff is informed and believes and based thereon alleges, based on Plaintiff's knowledge and analysis, Defendants also similarly submitted below cost bids for each of the other jobs listed in Exhibit "A". For each such project, Pacific Steel's bid for the project listed was sufficient to cover its costs, including overhead, and allowing for a positive net profit.  CMC Rebar's or GRS' bid came in significantly lower than the competition and as reflected in the attached spreadsheet. On information and belief, CMC Rebar and/or GRS bid these projects below their costs. Plaintiff is an experienced Furnish-and-Install reinforcing steel subcontractor. For these projects, Plaintiff performed a detailed review of the plans and specifications allowing it to determine the total weight of steel to be installed thereon. Plaintiff further analyzed the costs components necessarily associated with the work on the project. Such costs include the labor to install the steel, the material required and related costs such as detailing, and trucking which would necessarily be incurred by any supplier providing Furnish-and-Install services for the project. *See* Exhibit "A" at pp. 26-28.  For these projects, based on this analysis as well as Plaintiff's years of experience and expertise in the industry, and on information and belief, the cost of the work and the cost of doing business (inclusive of general and

15

1  administrative expenses) is higher than the price bid by Defendants, meaning

2  Defendants' price is less than its costs.

3      43.   Defendants' below cost bidding strategy and practices are not isolated

4  to California.  Indeed, CMC Rebar employees have admitted to engaging in  bidding

5  below profitable levels in other geographic areas.  According to the sworn affidavit

6  of Hantse Costas, a former sales manager at a CMC subsidiary who became Vice

7  President of Sales for a Texas fabricator, FABco LLC:

8          Over the last several years, I have become familiar with the
          Houston, Texas, and San Antonio, Texas, rebar fabrication
9          markets and the current market rates within the industry.
10         Based on my experience and knowledge of the winning bids
          of CMC in those areas, CMC's pricing in these markets
11         over the last several months is directly below FABco's
12         breakeven point.  ***Additionally, based upon my previous
          work for and knowledge of CMC, I believe CMC's recent
13         prices submitted on bids in the Houston and San Antonio
          markets are at a level so low that its Rebar Fabrication
14         division in these two markets is not making a profit on
15         these jobs.***  As a result of CMC's undercutting, FABco has
          recently experienced a significant drop in the amount of
16         bids that it has been awarded.  I have learned that CMC has
17         won those bids.  CMC's prices are also markedly below
18         what is traditionally the customary range for the rebar
          fabrication markets in Houston and San Antonio.
19

20  Sworn Affidavit of Hantse Costas, *FABco, LLC v. CMC*, No. DC-16-09402 (Dallas

21  Cnty., Aug. 3, 2016) at ¶ 4 (emphasis added).

22      44.   The purpose behind CMC Rebar's below cost bidding in the San Antonio

23  and Houston markets was explained by another affidavit from a different former CMC

24  employee, Adrian Cano, who was employed by CMC or its subsidiaries for over eight

25  years, including as the Manager of Distribution for the Central Region.  *See* Sworn

26  Affidavit of Adrian Cano ["Cano Aff.], *FABco, LLC v. CMC* (Dallas Cnty., Aug. 3,

27  2016) at ¶ 2.  According to Mr. Cano:

28

6046673.7                                                    22-cv-00892

> By [February 2015], FABco was beginning to be viewed as a serious competitor of CMC in the Central Region because FABco was taking a significant amount of market share away from CMC and several key employees had defected to join FABco.
>
> \*\*\*\*\*
>
> In the first quarter of 2016, while I was a [CMC] Sales Manager focused on the Houston area, Andrew Houser, Director of Sales for Rebar Fabrication Central Region, instructed me and other sales agents to "take FABco out" if we were competing with FABco on a bid.  Shortly thereafter, Andrew Houser left CMC and was replaced by Matt Schewe.  Matt Schewe and Chris Stowers, Director of Operations for Rebar Fabrication Central Region, instructed me to do everything we can to undercut FABco's pricing.  I was told that FABco would not be able to maintain operations if we undercut their pricing and that they would "go broke."  Chris Stowers also informed me that he had "seen FABco's books" and knew that we could take them out and put them out of business.

*Id*. at ¶¶ 5, 10.

45.    On information and belief, the FABco litigation against CMC resulted in a multi-million dollar settlement.

46.    As these sworn affidavits evidence, Defendants have engaged in below-cost bidding more than once in an attempt to extinguish or minimize competition from smaller fabricators poised to become more efficient and effective competitors.

## III.    CMC's Gerdau Acquisition

47.    In large part due to CMC Rebar's and GRS's below cost bidding practices, some of the largest fabricators in the market were running into serious financial trouble and sustaining massive losses in 2017 and thereafter. These included Gerdau, Alamillo Rebar, Inc. and Harris Rebar Northern California, Inc.

48.    As a result of such losses, on January 2, 2018, CMC announced that it had entered into an agreement to acquire four steel mills (including one in Rancho

6046673.7

22-cv-00892

1    Cucamonga, California) and 33 rebar fabrication facilities across the United States

2    from Gerdau S.A. and its subsidiaries (the "Gerdau Acquisition").[2]  The Gerdau

3    Acquisition resulted in a combination of two of the three largest vertically integrated

4    rebar manufacturers and fabricators in the country.

5          49.     The Gerdau Acquisition closed on November 5, 2018.  Following this

6    acquisition, CMC and its wholly-owned subsidiaries had seven mini mills (in

7    Alabama, California, Florida, New Jersey, South Carolina, Tennessee, and Texas),

8    two micro mills (in Arizona and Oklahoma), and one rolling mill (in Arkansas)

9    throughout the United States.  As touted by CMC in its 2019 annual report:

> With the completed acquisition of significant additional
> U.S. assets, fiscal 2019 was a truly transformative year for
> CMC.  Through the acquisition, we have added 33 steel
> fabrication facilities, four steel mini mills, 2.7 million tons
> of capacity and 2,500 new colleagues to CMC.  As a result,
> at the close of fiscal 2019, CMC had more than 60
> fabrication facilities across the country and 10 U.S. steel
> mills.

16    CMC, *Ready to XL*, 2019 Annual Report, at 3.

17          50.     The Gerdau Acquisition doubled the number of CMC's rebar

18    fabrication plants and, immediately afterwards, CMC referred to itself "[a]s one of

19    the largest rebar fabricators in the U.S."  *Id.* at pg. 11.  Today, CMC touts itself as

20    "*the* United States' largest manufacturer and fabricator of steel reinforcing bar. . . ."

21    *See Who is CMC?*, CMC, https://www.cmc.com/en-us/investors (last visited May

22    11, 2022) (emphasis added).

23

24

---

[2] In particular, as noted above, Gerdau S.A.'s Furnish-and-Install business was conducted through a Delaware partnership, GRS, the two partners in which were Gerdau Ameristeel US Inc. ("GAUS") and Gerdau Ameristeel WC, Inc. ("GAWS"). As part of the Gerdau Acquisition, GAUS sold its interest in GRS to Defendant CMC Steel US and GAWC sold its interest in GRS to Defendant CMC Rebar.

6046673.7

22-cv-00892

51.    By the time the Gerdau Acquisition closed, despite a strong construction boom in California, other large fabricators also were running into financial trouble as a result of CMC Rebar's and GRS's below-cost pricing. Alamillo Rebar, Inc. ("Alamillo") was one such company. On February 4, 2019, Pacific Steel and Alamillo entered into a series of agreements whereby Pacific Steel agreed to complete Alamillo's backlog of work and purchased much of its rebar equipment and inventory.

52.    A few months later, on June 24, 2019, Pacific Steel entered into a similar agreement with another rebar fabricator, Harris Rebar Northern California, Inc. ("Harris"), whereby Pacific Steel purchased most of Harris's rebar equipment and inventory. Harris, which was owned by Nucor, suffered diminished profits just like Alamillo despite the strong demand in California for rebar and Furnish-and-Install services created by the construction boom. Harris was yet another casualty of CMC Rebar's and GRS's below-cost bidding scheme. By the end of 2019, CMC Rebar's and GRS's below-cost pricing had eliminated or marginalized three of its four largest rebar Furnish-and-Install competitors.

## IV.    **Harm to Competition and to Plaintiff.**

53.    CMC Rebar's and GRS's below-cost pricing in the rebar Furnish-and-Install market, as alleged above, reduced competition by, among other things, unlawfully taking sales from Pacific Steel, diminishing Pacific Steel's revenues, profits, and growth, and preventing Pacific Steel from investing further in more efficient and effective operations, and from realizing greater economies of scale. CMC Rebar's and GRS's below-cost pricing in the rebar Furnish-and-Install market also reduced competition by unlawfully taking sales from other market participants including, among others, Harris and Alamillo, diminishing their revenues, profits, and growth, and preventing them from investing further in more efficient and effective operations, and from realizing greater economies of scale.

6046673.7

22-cv-00892

54.    Defendants' conduct as alleged herein has injured and/or will injure Pacific Steel in its business or property by denying sales and profits to Pacific Steel in the market for rebar Furnish-and-Install services, and by lowering the value of Pacific Steel's business.

### FIRST CAUSE OF ACTION

**California Unfair Practices Act, Cal. Bus. & Prof. Code § 17043
(Against All Defendants)**

55.    Plaintiff realleges and incorporates, as though set forth fully herein, Paragraphs 1 through 54 hereinabove.

56.    Defendants CMC Rebar, CMC Steel US and CMC Rebar West (including through  GRS), and each of them, are and/or have been for some time engaged in the business of selling rebar Furnish-and-Install services within the State of California.

57.    Defendants CMC Rebar, CMC Steel US and CMC Rebar West (including through  GRS), and each of them, have sold rebar Furnish-and-Install services in California at a price less than their cost and with the purpose of injuring competitors and destroying competition in the rebar Furnish-and-Install market in violation of the California Unfair Practices Act, California Business & Professions Code § 17043.

58.    Defendants CMC Rebar, CMC Steel US and CMC Rebar West (including through  GRS), and each of them, were not only aware that their acts would injure Pacific Steel and/or destroy competition in the rebar Furnish-and-Install market, they engaged in below-cost sales for the purpose of injuring Pacific Steel or destroying competition.

59.    As a result of these acts, Pacific Steel has been injured in the form of lost profits and diminished business value in an amount to be proved at trial.

6046673.7

22-cv-00892

## <u>SECOND CAUSE OF ACTION</u>

**California Unfair Practices Act, Cal. Bus. & Prof. Code § 17044**
**(Against All Defendants)**

60.    Plaintiff realleges and incorporates, as though set forth fully herein, Paragraphs 1 through 54 hereinabove.

61.    Defendants CMC Rebar, CMC Steel US and CMC Rebar West (including through  GRS)and each of them, are and/or have been for some time engaged in the business of selling rebar Furnish-and-Install services within the State of California.

62.    Defendants CMC Rebar, CMC Steel US and CMC Rebar West (including through  GRS), and each of them, have sold rebar Furnish-and-Install services in the State of California as a loss leader, such that the effect has been to divert trade from Pacific Steel or otherwise injure Pacific Steel specifically and competition generally, in violation of the California Unfair Practices Act, California Business & Professions Code § 17044.

63.    Defendants CMC Rebar, and CMC Steel US and CMC Rebar West (including through  GRS), and each of them, were not only aware that their acts would divert trade from or otherwise injure Pacific Steel specifically and competition generally in the rebar Furnish-and-Install market, they engaged in loss leader sales for the sole and express purpose of injuring Pacific Steel and competition.

64.    As a result of these acts, Pacific Steel has been injured in the form of lost profits and diminished business value in an amount to be proved at trial.

## <u>THIRD CAUSE OF ACTION</u>

**California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(Against All Defendants)**

65.    Plaintiff realleges and incorporates, as though set forth fully herein, Paragraphs 1 through 54 hereinabove.

21

6046673.7

22-cv-00892

66.     The conduct complained of herein—including below cost and loss leader sales of Defendants CMC Rebar, CMC Steel US and CMC Rebar West (including through  GRS), and each of them—constitutes unlawful business practices in that such conduct violates California's Unfair Trade Practices Act.

67.     The anticompetitive behavior of Defendants CMC Rebar, CMC Steel US and CMC Rebar West (including through  GRS), and each of them, as described above, is unfair, unconscionable, and unlawful, and in any event is a violation of the policy or spirit of the law because it significantly harms and threatens competition.

68.     Defendants' anticompetitive behavior and unfair business practices are part of an ongoing practice, and any purported utility of their conduct is outweighed by the gravity of the consequences to Pacific Steel and competition.

69.     Defendants' unfair, unconscionable, and unlawful business practices constitute unfair competition in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*.

70.     As a result of Defendants' unlawful and/or unfair business practices, Pacific Steel has been and will be injured in its business and property through lost income and profits, increased costs, and diminished business value.  In addition, Defendants, and each of them, have been unjustly enriched as a result of these same unlawful and/or unfair business practices through increased profits and Pacific Steel is entitled to restitution as a result thereof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter a judgment against Defendants, and each of them, which:

A.     Adjudges and decrees that Defendants, and each of them, engaged in below-cost sales and/or loss leader sales in violation of California's Unfair Practices Act, California Business & Professions Code §§ 17043 and 17044;

B.     Adjudges and decrees that Defendants, and each of them, engaged in unlawful and/or unfair business practices in violation of California's

6046673.7

22-cv-00892

Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*;

C.    Provides permanent injunctive relief preventing Defendants, and each of them, from continuing the unlawful acts described above;

D.    Awards Plaintiff damages, as required by statute, or, alternatively, restitution, caused by Defendants' conduct;

E.    Awards Plaintiff costs incurred in pursuing this action;

F.    Awards pre-judgment and post-judgment interest at the maximum legal rate; and

G.    Awards such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

71.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff requests a trial by jury of all issues so triable.

Dated: July 11, 2022                              PROCOPIO CORY HARGREAVES
                                                  & SAVITCH LLP


                                          By:    s/ *J. Christopher Jaczko*
                                                  J. Christopher Jaczko
                                                  Jacob K. Poorman

                                                  PACIFIC STEEL GROUP
                                                  David A. Perkins

                                                  *Attorneys for Plaintiff*
                                                  PACIFIC STEEL GROUP

6046673.7                                                              22-cv-00892