UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC STEEL GROUP,<br><br>         Plaintiff,<br><br>v.<br><br>CMC STEEL FABRICATORS, INC,<br>*et al*.,<br><br>         Defendants. | Case No.:  22-cv-0892-L-DEB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO SHIFT EXPERT COSTS**<br><br>**[DKT. NO. 101]** |

      Before the Court is Plaintiff Pacific Steel Group's ("Pacific Steel") Motion to Shift Expert Costs. Dkt. No. 100; Dkt. No. 101. Defendants CMC Steel Fabricators, Inc., CMC Steel US, LLC, and CMC Rebar West ("CMC Rebar") oppose the Motion, and Pacific Steel replied. Dkt. Nos. 115, 117.[1] For the reasons discussed below, the Court **GRANTS** Pacific Steel's Motion.

## I.    INTRODUCTION

      Pacific Steel and CMC Rebar compete in the rebar furnish-and-install ("F&I") industry. Pacific Steel's amended complaint alleges CMC Rebar submitted below-cost bids in violation of the California Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17043, 17044,

---

[1] The Court **GRANTS** Pacific Steel's motions to file documents under seal and for leave to file a reply. Dkt. Nos. 41, 99, 117.

and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. Dkt. No. 11. CMC Rebar denies the allegations. Dkt. No. 30.

During fact discovery, Pacific Steel requested that CMC Rebar produce F&I pricing templates, which Pacific Steel states are industry-standard pricing forms supporting rebar F&I bids. Dkt. No. 101 at 8; Dkt. No. 101-2 at 4. Pacific Steel represents its experts rely on the pricing templates to opine whether CMC Rebar submitted below-cost bids. Dkt. No. 101 at 8.

CMC Rebar has produced approximately 4,000 templates. Many, however, were produced after Pacific Steel's experts completed their reports. These late productions have required Pacific Steel's experts to revise their reports. Through this Motion, Pacific Steel seeks to shift the costs of the latest round of revisions to CMC Rebar. Pacific Steel also seeks an order requiring CMC Rebar to search its employees' laptops for the 199 templates that remained missing when Pacific Steel filed its Motion.

## II.    PROCEDURAL BACKGROUND

The Court issued the Scheduling Order on August 23, 2023, and granted four deadline extensions at the parties' joint requests. Dkt. Nos. 40, 53, 62, and 69. The final extensions set a July 26, 2024 fact discovery cut-off, a September 20, 2024 deadline for Pacific Steel to produce revised opening expert reports, and a November 7, 2024 expert discovery cut-off. Dkt. Nos. 62, 75.

On August 22, 2023, Pacific Steel served its First Set of Requests for Production on CMC Rebar. One request sought "[a]ny and all DOCUMENTS REFLECTING YOUR Pricing Templates for projects bid by [CMC Rebar] from January 1, 2015 up to and including the present." Dkt. No. 101-2 at 4. On September 21, 2023, CMC Rebar agreed to "produce non-privileged documents responsive to this Request that are in its possession, custody, or control insofar as such documents are located during CMC Rebar's reasonable search and review." Dkt. No. 101-3 at 12.

On April 5, 2024, CMC Rebar produced more than 2,000 pricing templates it represented "comprise [D]efendants' California non-Exhibit A F&I pricing templates for the October 31, 2017 through December 31, 2022 period." Dkt. No. 144-1.[2]

On May 6, 2024, Pacific Steel notified CMC Rebar that the number of produced templates "is far too low" and questioned whether additional templates existed.[3] In response, CMC Rebar produced 1,000 additional templates in May and June of 2024. Dkt. No. 115 at 7; *see also* Dkt. No. 101-1 at 2.

On July 26, 2024, CMC Rebar produced 2,800 bid proposals. Dkt. No. 144-4 at 3.[4] Pacific Steel, however, could not locate pricing templates corresponding to approximately 1,000 bid proposals. *Id.* On August 6, 2024, Pacific Steel informed CMC Rebar that there "appears to be a significant gap in Defendants' production of pricing templates" and provided a spreadsheet listing the missing templates. Dkt. No. 144-4 at 2. Later that month, CMC Rebar produced another 662 templates. Dkt. No. 101-1 at 2.

Because this new production came after Pacific Steel served its expert reports, Pacific Steel's experts revised their reports and damage calculations to account for the additional templates. *Id.* Although Pacific Steel represents it spent approximately $100,000

---

[2] Exhibit A to the amended complaint identified twenty F&I jobs that Pacific Steel included as "examples" of CMC Rebar "aggressively bidding [F&I] rebar projects in a targeted way to prevent Pacific Steel from gaining a foothold in the market." Dkt. No. 11 at 9–11 & Ex. A. The pricing template production at issue concerned jobs not included in Exhibit A. *See* Dkt. No. 144-4 at 2.

[3] Dkt. No. 144-2 at 3 ("It appears that prior to Friday's production Defendants had produced only 27 templates for 2018. We believe this is far too low and would have expected to see 100s of templates per year. Similarly, in 2022 we received 55 pricing templates for NoCal when prior years had well over 100. Can you advise as to whether you anticipate producing more templates; and, if not, explain why there is such a small number for such years.").

[4] Bid proposals are submitted to customers, and a pricing template should correspond to each proposal. Dkt. No. 72 at 4; Dkt. No. 101 at 9–10 & n.7.

revising its expert reports, Pacific Steel does not seek to shift the costs of those revisions. Dkt. No. 101 at 11.[5]

On October 8, 2024, CMC Rebar produced a bid report with its expert disclosure. Dkt. No. 115 at 7–8; *see also* Dkt. No. 101 at 11.[6] From this bid report, Pacific Steel determined and notified CMC Rebar that another approximately 2,700 templates were missing from CMC Rebar's production. Dkt. No. 101 at 12; Dkt. No. 144-5 at 2. In response, CMC Rebar located and produced another 266 templates (59 on November 26, 2024, 42 on December 9, 2024, and 165 on December 16, 2024). Dkt. No. 101-1 at 2–3. Pacific Steel asserts its experts must again revise their reports to account for CMC Rebar's most recent template productions and, through this Motion, seeks to shift those costs to CMC Rebar.

## III.    LEGAL STANDARDS

Pacific Steel's Motion seeks cost-shifting under Federal Rules of Civil Procedure 26(g) and 37(c). Dkt. No. 101 at 2, 7, 15–16.

### A.    *Rule 26(g)*

Federal Rule of Civil Procedure 26(g)(1)(B) requires an attorney or party responding to a discovery request to certify that every response or objection "to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry" is (i) consistent with the Federal Rules of Civil Procedure and warranted by existing law, (ii) not interposed

---

[5] CMC Rebar represented its production of 662 additional templates was the product of "an extensive, multistep process to collect, process, search, and sample across over 2.5 terabytes of information," [and] "careful coordination between outside counsel, CMC Rebar sales personnel, company IT personnel, and document vendors over the course of multiple weeks . . . and countless hours of work, including by attorneys and company personnel." Dkt. No. 72 at 6.

[6] Pacific Steel explains that a bid report includes proprietary details from CMC Rebar's bids, which Pacific Steel describes under seal. Dkt. No. 100 at 11; Dkt. No. 101 at 11.

4

for an improper purpose, and (iii) neither unreasonable nor unduly burdensome or expensive. Fed. R. Civ. P. 26(g)(1)(B).

Further, under Rule 26(g)(3), "[i]f a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

### B.  *Rule 37(c)*

Federal Rule of Civil Procedure 37(c)(1)(A) authorizes the court to "order payment of reasonable expenses, including attorney's fees, caused by the failure" of a party "to provide information as required by Rule 26(a) or (e)." Sanctions under Rule 37(c)(1) are appropriate "unless the failure was substantially justified or is harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1)).

CMC Rebar's alleged failure to comply with Rule 26(e) is at issue here. That rule provides that "[a] party who has . . . responded to a . . . request for production . . . must supplement . . . its . . . response in a timely manner if the party learns that in some material respect the . . . response is incomplete . . . ." Fed. R. Civ. P. 26(e)(1)(A). "Under [Rule] 26(e), the duty to supplement is a continuing duty, and no additional interrogatories by the requesting party are required to obtain supplemental information – rather the other party has an affirmative duty to amend a prior response if it is materially incomplete or incorrect." *Murillo v. Arizona*, No. CV-20-01580-PHX-SPL (JZB), 2023 WL 2540245, *3 (D. Ariz. Mar. 16, 2023) (internal quotation and citations omitted).

//

//

//

//

//

5

Rule 26(e) "provides no safe harbor to responding parties for belated productions that they could have made sooner with due diligence." *Ms. J.P. v. Barr*, No. 2:18-CV-6081-JAK (SKX), 2020 WL 4643928, at *2 (C.D. Cal. Jan. 17, 2020) (citation omitted).[7]

"The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citation omitted).

## IV.  DISCUSSION

Applying these legal standards, the Court finds CMC Rebar's late template productions (many produced after the expert report deadline and some produced more than sixteen months after Pacific Steel requested them) were neither substantially justified nor harmless. The Court, therefore, shifts the cost of Pacific Steel's most recently required expert report revisions to CMC Rebar.

The following table summarizes the relevant events surrounding Pacific Steel's efforts to obtain a complete production of CMC Rebar's pricing templates:

| | |
|---|---|
| 8/22/23 | Pacific Steel propounds Request for Production of Documents No. 4 requesting "Any and all DOCUMENTS REFLECTING YOUR pricing templates for projects bid by YOU from January 1, 2015 up to and including the present."[8] |
| 9/21/23 | CMC Rebar represents it will conduct a reasonable search for and produce pricing templates in its custody or control. |

---

[7] *See also Zox LLC v. Zox*, No. 2:21-cv-01609-PA (SKX), 2021 WL 8649853, at *2 (C.D. Cal. Dec. 14, 2021) ("There is no such "discovery is ongoing" escape hatch to excuse unjustified and unnoticed late or last-minute productions. Any responsive documents produced late without good reason for why they were not searched for and produced sooner may subject the responding party to sanctions under Rule 37(b)(2)(A) and (C)"); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1357-58 (N.D. Ga. 2012) (awarding reasonable expenses as sanctions under 26(g)(3) and 37(c)(1) for a "failure to ensure that all collected hard drives were actually searched and to locate the back-up tapes in [responding party's] evidence locker").

[8] The parties subsequently agreed to limit the request to January 1, 2017 to December 31, 2022. Dkt. No. 101 at 6.

| 4/5/24 | CMC Rebar produces 2,000 pricing templates representing "the documents in this production comprise defendants' . . . pricing templates for the October 31, 2017 through December 31, 2022 period." |
|---|---|
| 5/6/24 | Pacific Steel informs CMC Rebar that some years have an unusually small number of pricing templates. |
| 6/5/24 | CMC Rebar states it will produce more pricing templates by 6/7/24. |
| 5-6/2024 | CMC Rebar produces 1,000 more pricing templates to Pacific Steel. |
| 7/26/24 | CMC Rebar produces 2,800 bid proposals. |
| **7/26/24** | **Fact discovery closed.** |
| 8/6/24 | Pacific Steel sends CMC Rebar a list of missing pricing templates based on its review of the 2,800 bid proposals. |
| **8/16/24** | **Pacific Steel produces its initial expert reports pursuant to the Court's deadline.** |
| 8/23/24 | CMC Rebar produces 425 more pricing templates. |
| 8/27/24 | CMC Rebar produces 237 more pricing templates. |
| 8/30/24 | Pacific Steel informs CMC Rebar that hundreds of pricing templates are still missing. |
| 9/2024 | Pacific Steel pays $100,000 to revise its experts' reports to incorporate the additional templates CMC Rebar produced in August 2024. |
| 10/8/24 | CMC Rebar produces a bid report with its supplemental expert disclosures. |
| 10/30/24 | Based on the bid report CMC Rebar produced on 10/8/2024, Pacific Steel discovers and informs CMC Rebar that additional templates are missing from CMC Rebar's production. |
| **11/7/24** | **Expert discovery closed.** |
| 11/26/24 | CMC Rebar produces 59 more pricing templates. |
| 12/9/24 | CMC Rebar produces 42 more pricing templates. |
| 12/16/24 | CMC Rebar produces 165 more pricing templates. |
| 12/20/24 | Pacific Steel files this motion to shift the costs of revising its expert reports a second time, and to order CMC Rebar to search laptops for 199 missing templates. |

As this timeline reflects, CMC Rebar's April 5, 2024 representation that "[t]he documents in [that] production comprise defendants' California non-Exhibit A F&I pricing templates [from 2017 to 2022]," was incorrect when it was made. CMC Rebar produced approximately 2,000 more templates after this representation.

The timeline also evidences that none of CMC Rebar's supplemental productions resulted from CMC Rebar's own discovery that its production was incomplete. Instead,

CMC Rebar made all supplemental productions at Pacific Steel's prompting, after Pacific Steel discovered substantial gaps in CMC Rebar's production.

Most recently, on October 8, 2024 (ten weeks after the close of fact discovery and two months after Pacific Steel produced its initial expert reports), CMC Rebar produced a "bid report" supporting its initial expert report. From this bid report (which CMC Rebar had not previously produced), Pacific Steel identified 2,700 bids for which CMC Rebar had not produced a corresponding pricing template. This discovery resulted in CMC Rebar producing an additional 266 templates between November and December 2024, and Pacific Steel's experts must again revise their reports to incorporate them.

It was not Pacific Steel's burden to review CMC Rebar's production to identify missing documents and ensure compliance with Rule 34. Instead, it was CMC Rebar's obligation to make "a reasonable effort" to "provid[e] all the information and documents available to [it] that are responsive to the discovery demand." *Legault v. Zambarano,* 105 F.3d 24, 28 (1st Cir. 1997); *see also Price v. Synapse Grp., Inc.*, No. 16-cv-1524-BAS-BLM, 2018 WL 9517276, at *8 (S.D. Cal. Sept. 12, 2018) (a responding party has a "duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents").

The Court finds CMC's late productions establish a lack of diligence and were not substantially justified. Pacific Steel identified gaps in CMC Rebar's template production by examining CMC Rebar's own documents. CMC Rebar provides no valid explanation why it failed to proactively conduct this same review and come to the same realization.[9]

---

[9] CMC Rebar explains that its pricing templates were "not stored in an easy to pull, single location." Dkt. No. 115 at 5. However, "the fact that Defendants' computer system is not readily searchable does not exempt them from their discovery obligations." *See Agne v. Papa John's Int'l, Inc.*, No. C10-1139-JCC, 2012 WL 12882903, at *1 (W.D. Wash. Feb. 6, 2012) (citing *Starbucks Corp. v. ADT Sec. Servs., Inc.*, C08-0900-JCC, 2009 WL 4730798, *6 (W.D. Wash. Apr. 30, 2009) ("[T]he Court cannot relieve Defendant of its duty to produce [requested] documents merely because Defendant has chosen a means to

The Court finds CMC Rebar failed to conduct a diligent search at the outset of its production. *Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 465 (D. Ariz. 2020) ("To state the obvious, in responding to production requests, a party is required to reasonably and diligently search for and produce responsive documents within its possession, custody, or control."); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987) ("The V.A.'s various discovery omissions are directly attributable to the failure of defendant and its counsel to establish a coherent and effective system to faithfully and effectively respond to discovery requests."). This failure resulted in the piecemeal production of pricing templates over eighteen months.

CMC Rebar's late and piecemeal template production warrants sanctions under Rules 26(g)(3) and 37(c)(1). CMC Rebar violated Rule 26(g)(3) by certifying the completeness of its production without conducting a reasonable and diligent search to locate and produce responsive templates as Rule 34 requires. *See, e.g., Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848-DMG (PLAx), 2021 WL 12302254, at *19 (C.D. Cal. Dec. 29, 2021) (imposing sanctions under Rules 26(g) and 37 for "false certifications [that] have primarily been acts of *omission* during the discovery process. For instance, defendants narrowly construed the scope of their discovery obligations to include only email ESI from certain locations; they failed to search all available drives, servers, and other locations for custodians' documents . . . ."); *Gateway, Inc. v. ACS Comm. Sol'ns, Inc*., 07 Civ. 6732 (CM) (DF), 2009 WL 10695887, at *9 (S.D. N.Y. Sept. 18, 2009) (There is "a duty, from the outset of a litigation, to locate relevant information, and, where the information is electronically stored, this duty includes taking the steps necessary to 'become fully familiar with . . . [defendant's] data retention architecture.'"). CMC Rebar also violated Rule 26(e)

---

preserve the evidence which makes ultimate production of relevant documents expensive.") (citations omitted); *Fagan v. Dist. of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991) ("Plaintiffs should not suffer if the information is not easily accessible because defendants have an insufficient filing system.")).

by failing to timely supplement its pricing template production when it should have known numerous templates were missing. *See Allflex USA, Inc. v. Avid Identification Sys., Inc*., No. EDCV-06-1109-SGL (OPx), 2009 WL 8591843, at \*5 (C.D. Cal. Oct. 30, 2009) ("[A] Rule 26(e) violation can be found even in the absence of intent 'because a party is required to turn over materials that he or she is aware of, and those he or she should have been aware of.'").

CMC Rebar's late and incomplete productions are not harmless. *See* Dkt. No. 115 at 10 (CMC Rebar's opposition arguing the late-produced templates "do not differ in kind from those previously produced and will not materially impact any of [Pacific Steel's] expert opinions or its litigation or trial strategy."). The late template productions required Pacific Steel to twice revise its experts' reports. One expert describes the additional work required:

- Revising and re-running code to integrate the new data from the late produced templates into the existing data sets;
- Re-running my analyses based on the updated data;
- Quality checking the results of these updated analyses;
- Revising the content my current report, including text, tables and graphics, to generate a new report reflecting the updated results; and
- Compiling and producing the back-up data associated with the updated analyses.

Dkt. No. 117-2 at 2–3. These latest revisions are in addition to the $100,000 Pacific Steel already spent to revise its expert reports after CMC Rebars produced another 662 templates in August 2024. CMC Rebar's incremental production also contributed to and/or caused numerous extensions in scheduling order deadlines. *See* Dkt. Nos. 72, 74, 75, 88, 91, 137, and 153). These additional revisions, costs, and delays establish the late productions are not harmless. *Wong v. Regents of the Univ. of Cal*., 410 F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of the court and other parties in that manner is not harmless.").

## V.    REMEDIES

### A.    *Cost-Shifting*

The Court orders CMC Rebar to bear the cost of having Pacific Steel's experts revise their reports to incorporate the templates CMC Rebar has produced since October 2024. The Court, however, does not extend this sanction to CMC Rebar's outside counsel, who were unaware of the ability to generate the bid report that revealed the templates at issue were missing from CMC Rebar's production. Dkt. No. 115 at 8; *see also* Fed. R. Civ. P. 26(g) and 37(c) (courts may impose discovery sanctions on the party or attorney as appropriate); *Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 221 (S.D.N.Y. 2003) ("The client is charged with knowledge of what documents it possesses.").

Upon completion of the revisions, Pacific Steel must provide CMC Rebar with declarations from its experts detailing the time and cost of revising their reports to account for the templates CMC Rebar produced since October 2024.

If CMC Rebar objects to the time and cost described in the declarations, it must notify counsel for Pacific Steel within seven days of receipt. The parties have seven days to meet and confer on any objections and must notify the Court of any unresolved objections within two business days of completing their meeting and conferring. CMC Rebar must pay these costs and expenses within 14 days of receipt of the declarations or resolution of any dispute over the cost of the revisions.

### B.    *Laptop Search*

On December 19, 2024, CMC Rebar notified Pacific Steel that "a de minimis number of [the 199 missing] templates may be located on any F&I sales personnel laptop but not on a centrally located repository," which is where CMC Rebar had focused its search.  Dkt. No. 144-7 at 2–3. Pacific Steel seeks an order requiring CMC Rebar to search employee laptops for the missing templates.  Dkt. No. 101 at 21.

On February 28, 2025, the Court heard argument on Pacific Steel's Motion, including its argument that "CMC Rebar should be ordered to search the laptops of all sales

personnel for responsive templates." Dkt. No. 101 at 21; *see also* Dkt. No. 157 at 33–35 (Hr'g Tr.). At the Court's suggestion, the parties agreed to meet and confer about "some limited number of computers to search as a starting point, with the understanding and expectation that if those computers contain no templates, then no further searching would be appropriate." Dkt. No. 157 at 33–34. The Court instructed the parties that if "more than one or two [templates] are located on those computers, then likely additional searches of additional computers would be appropriate." *Id.* at 34.

On March 7, 2025, the parties' filed a Status Report summarizing their meet and confer efforts. Dkt. No. 158. CMC Rebar states it has "worked diligently, engaging extensively with multiple sales and IT personnel, to redouble its efforts to track down the approximately 199 outstanding templates on a project-by-project basis," which search located an additional 149 templates. *Id.* at 7–8. CMC Rebar also represented it "is continuing to search for all the outstanding templates," and "expects to identify several more templates . . . in the coming days." *Id.* at 9.

Considering these superseding events and CMC Rebar's ongoing search, the Court defers ruling on whether to order CMC Rebar to search specific employee laptops. Instead, the Court orders CMC Rebar to file a Status Report no later than **April 18, 2025** supported by a declaration signed under penalty of perjury describing: (1) its efforts to locate and produce all missing pricing templates since the March 7, 2025 Status Report; (2) how many templates it has located in that search; (3) how many templates remain missing and for what bids; and (4) what additional steps it intends to take to locate any templates that remain missing.

//
//
//
//
//

Pacific Steel may file a response no later than seven days after receiving service of CMC Rebar's Status Report. Pacific Steel's Status Report must also update the Court on the status of the revisions to its expert reports. The Court will issue an appropriate order regarding any additional searches after reviewing the parties' submissions.

**IT IS SO ORDERED.**

Dated: **April 11, 2025**

_____

Daniel E. Butcher
United States Magistrate Judge

22-cv-0892-L-DEB