UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC STEEL GROUP,<br><br>            Plaintiff,<br><br>v.<br><br>CMC STEEL FABRICATORS, INC, dba CMC REBAR et al.,<br><br>            Defendants. | Case No.: 22-cv-0892-L-JLB<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>**[ECF NO. 83]** |

Pending before the Court in this action alleging violation of the California Unfair Practices Act and the Unfair Competition Law is Defendants' motion seeking summary judgment and exclusion of Plaintiff's expert evidence. (ECF No. 83, amended at ECF No. 237.) Plaintiff filed an opposition and Defendants filed a reply. (ECF Nos. 95, 111, amended at ECF Nos. 238, 239.) The matter is submitted on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, Defendants' motion is denied.

**I.     BACKGROUND**

Plaintiff Pacific Steel Group ("PSG" or "Plaintiff") and Defendants CMC Steel Fabricators, Inc., CMC Rebar West, and CMC Steel US LLC (collectively "CMC Rebar" or Defendants) compete as subcontractors in the steel rebar furnishing and installation

("F&I") market in California. Rebar are steel bars used to reinforce concrete or masonry structures. Most commonly, rebar consists of hot-rolled round bars with heavy ridges or patterns that assist in binding to the concrete or masonry. Before rebar can be installed in a construction project, it is cut and shaped according to a structural engineer's drawings or plans.

Rebar companies, including Plaintiff and Defendants, compete for F&I work by submitting bids to general contractors or subcontractors. F&I contracts are primarily fixed price. (ECF No. 112, "Joint Stat." at 2.) Price is the principal factor in selecting among F&I bids. (*See id.*)

Plaintiff claims that between October 31, 2017, and December 31, 2022, Defendants sold F&I services below cost and as loss leaders in California with the purpose of injuring competitors or destroying competition in violation of California Business and Professions Code Sections 17043, 17044, and 17200. (ECF No. 11, First Am. Compl.) It seeks injunctive and monetary relief.

Defendants removed this action from State court. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and applies California law to state law claims. *Gonzales v. CarMax Auto Superstores, Inc*., 840 F.3d 644, 649 (9th Cir. 2016).[1]

## II. DISCUSSION

Pending before the Court is Defendants' summary judgment motion. Federal Rule of Civil Procedure 56[2] empowers the Court to enter summary judgment on factually unsupported claims or defenses. Summary judgment is appropriate if depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled

---

[1] Unless otherwise noted, internal quotation marks, citations, footnotes, ellipses, and brackets are omitted from citations.

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1  to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party can meet its burden to demonstrate the absence of a genuine issue of material fact by either of two methods:

> produce affirmative evidence ... negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may ... meet its initial burden of production by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

If the moving party fails to discharge this initial burden of production, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). If the moving party carries its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In this regard, the nonmoving party:

> must do more than simply show that there is some metaphysical doubt as to the material facts[, and] must come forward with specific facts showing that there is a genuine dispute for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In ruling on a motion for summary judgment, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "[A] judge's function at summary judgment is not to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id*. at 651; *see also id.* at 657. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Plaintiff asserts claims under sections 17043 and 17044 of the California Unfair Practices Act ("UPA").[3] The legislative purpose of the UPA is

> to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented.

Cal. Bus. & Prof. Code § 17001. In enacting the UPA, the California legislature was concerned "not only with the maintenance of competition, but with the maintenance of *fair and honest* competition." *Bay Guardian Co. v. New Times Media LLC,* 187 Cal. App. 4th 438, 457 (2010) (emph. in orig.), quoting *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.,* 14 Cal.4th 1247, 1262 (1997).

Section 17043 states:

> It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition.

Cal. Bus. & Prof. Code § 17043. Accordingly, violation of section 17043 requires two elements: (1) a below-cost sale (2) undertaken for the purpose of injuring competitors or

---

[3] Plaintiff's claim under California Business & Professions Code § 17200 is derivative of the UPA claims. (*See* ECF No. 18, Order Denying Defendants' Motion to Dismiss at 13.) *See also Aleksick v. 7-Eleven, Inc.,* 205 Cal. App. 4th 1176, 1185 (2012).

destroying competition." *San Francisco Print Media Co. v. The Hearst Corp.,* 44 Cal. App. 5th 952, 957 (2020).  "[S]ection 17043 is designed to reach a one-on-one clash between competitors, not just an effect on competition." *Bay Guardian Co.*, 187 Cal. App. 4th at 460.

Section 17044 states, "It is unlawful for any person engaged in business within this State to sell or use any article or product as a 'loss leader' as defined in Section 17030 of this chapter."  Cal. Bus. & Prof. Code § 17044.  A "loss leader" is "any article or product sold at less than cost [¶ w]here the effect is to divert trade from or otherwise injure competitors."  *Id.* § 17030(c).

Accordingly, a plaintiff can prevail under section 17043 or 17044 with proof of sale below cost and purpose of injuring competitors.  *Cel-Tech Comm'cns, Inc. v. Los Angeles Cellular Teleph. Co.,* 20 Cal.4th 163, 169, 178 (1999) (*"Cel-Tech"*); *Independent Journal Newspapers v. United Western Newspapers, Inc.*, 15 Cal.App.3d 583, 587 (1971).

The UPA "focus[es] literally on whether the defendant sold 'any article or product' at less than cost."  *Fisherman's Wharf Bay Cruise Corp. v. Superior Ct. (Blue and Gold Fleet, Inc.)*, 114 Cal.App.4th 309, 326 (2004) ("*Fisherman's Wharf*").  Accordingly, it is not necessary for a plaintiff to identify multitudes of below-cost sales to prevail; a single sale may be sufficient.  *Id.*

Further, the UPA possesses a "conspicuous focus … upon the mental state of defendants' purpose rather than ultimate impact of below-cost pricing." *Bay Guardian Co.*, 187 Cal. App. 4th at 459.  "[T]he very gravamen of the offense is the purpose underlying the anticompetitive act, rather than the actual or threatened harm to competition." *Id.* at 456.  This is an "especially stringent" requirement. *Id.*  The purpose element is defined as "the desire[] of injuring competitors or destroying competition." *Cel-Tech,* 20 Cal.4th at 174-75.  Mere knowledge that a seller's below-cost sales will injure competitors, or destroy competition is not sufficient. *Id.*

Accordingly, a plaintiff need not show "an anticompetitive impact." *Bay Guardian Co.*, 187 Cal. App. 4th at 456. The violation is complete when sales below cost are made with the requisite purpose. *Id.* at 457. It is "not necessary to await success in the monopolistic effort before the measures provided to safeguard the public interest and welfare [can] be invoked." *Id.*

In support of summary judgment Defendants argue that Plaintiff lacks any evidence to show that Defendants bid below cost, or that Plaintiff was harmed. Defendants' motion is based on the contention that the opinions of Plaintiff's experts Robert Scherer, M.B.A. and Matthew Raiff, Ph.D. are unreliable and should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Pharmacies, Inc.*, 509 U.S. 579 (1993).

Plaintiff opposes the motion by pointing to percipient witness evidence as sufficient on its own to raise genuine issues of material fact. As a secondary basis for its opposition, Plaintiff also argues that Mr. Scherer's and Dr. Raiff's opinions suffer no defects that would justify exclusion.

Specifically, Defendants challenge the legal sufficiency of Plaintiff's evidence on the issue of below-cost bids. They argue that Plaintiff's reliance on average costs is not sufficiently precise and fails to account for the variation in the size and complexity of various projects or any difference in costs between the time of the bid and actual work.

To the extent Defendants rely on federal antitrust law prohibiting predatory pricing, their arguments are unpersuasive due to the "significant differences" in the concept of below-cost pricing between the UPA and federal law. *See Fisherman's Wharf*, 114 Cal. App. at 325. Defendants also rely on numerous district court opinions and unpublished Ninth Circuit opinions. Neither are binding authority particularly on a point of California law. *See Camreta v. Green*, 563 U.S. 692, 709 n.7 (2011) (district court opinions); *Grimm v. Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) (unpublished appellate opinions); *Gonzales*, 840 F.3d at 649 (in diversity cases, federal courts apply substantive state law to state law claims); *Vernon v. City of Los Angeles*, 27 F.3d 1385,

1391 (9th Cir. 1994) (application of state law).  Considering ample California legal authority governing determination of below-cost pricing, Defendants' arguments are rejected.

The UPA defines costs: "'Cost' as applied to production includes the cost of raw materials, labor and all overhead expenses of the producer." Cal. Bus. & Prof. Code § 17026.  "Overhead expense"

> means all costs of doing business incurred in the conduct of the business and shall include without limitation the following items of expense: labor (including salaries of executives and officers), rent, interest, on borrowed capital, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising.

*Id.* § 17029.  "These statutes embody California's fully allocated cost standard, that is, a fair allocation of all fixed and variable costs associated with production of the article or product." *Pan Asia Venture Capital Corp. v. Hearst Corp.,* 74 Cal. App. 4th 424, 427, 432 (1999) ("*Pan Asia*"); *see also San Francisco Print Media,* 44 Cal. App. 5th at 959.

"The concept of fully allocated cost has been equated with average total cost, which reflects the portion of the firm's total costs – both fixed and variable – attributable on an average basis to each unit of output." *San Francisco Print Media,* 44 Cal. App. 5th at 957 n.3; *see also* Jud. Council of Cal. Civ. Jury Instr. ("CACI") 3303 ("The term 'cost' means all costs of doing business, including fixed costs that do not tend to change with sales … .").  Although there is no specific formula for determining the appropriate cost of a particular product or service, it is permissible to determine the cost by using "the average cost of manufacture over a reasonable time, rather than the cost of one item at a particular time." CACI 3304, 3306.  In circumstances of the present case, where the bids are for diverse rather than uniform projects, all that is required is that the cost determination is "reasonably related to the burden [the product or service] puts on [Defendants'] overall cost of doing business." *See id.* 3306; *see also San Francisco Print Media,* 44 Cal App. 5th at 959.  It is therefore not necessary for a plaintiff to precisely calculate the cost of each product or service to show below-cost sales.

Plaintiff cites to the declaration of Steven Davis. (Pl. Ex. 1 ("Davis Decl.").)[4] Defendants filed a motion to strike this declaration. (ECF No. 125.) In an order filed concurrently herewith, Defendants' motion to strike is denied.

Mr. Davis worked for Defendants' corporate parent Commercial Metals Company ("CMC") and its affiliated companies for 25 years. (Davis Decl. ¶ 3.) In 2011, CMC put Mr. Davis in charge of Defendants' California F&I business, and in 2015 promoted him to Director of Rebar Fabrication for CMC's West Division. (*Id.* ¶¶ 8-9.) In this position, until he left CMC in 2020, Mr. Davis oversaw Defendants' bidding, which included oversight of their sales personnel and estimators. (*Id.* ¶¶ 9, 11.) Mr. Davis also regularly interacted with CMC executives. (*Id.* ¶ 10.)

Mr. Davis stated that CMC and Defendants set out to drive PSG out of the market by bidding below cost notwithstanding the fact that this would cause Defendants financial losses. (*See, e.g., Id.* ¶¶ 17, 19, 21, 30, 35-38, 40-43 & Exs. 1, 2, 4.) CMC's CEO and other executives expressed their desire to drive Plaintiff out of the market by cutting into Plaintiff's profits. (*Id.* ¶ 19; *see also id.* ¶ 35.) Defendants deliberately sought to accomplish this by bidding below cost. (*Id.* ¶¶ 36, 38-40.) In his capacity as the Director of Rebar Fabrication for CMC's West Division, Mr. Davis was personally involved in approving below-cost bids with the knowledge that the purpose was to drive Plaintiff out of the market. (*See, e.g., id.* ¶¶ 35, 41-43.)

In determining whether they were bidding below cost, Defendants relied on "stacked costs." "Stacked costs are the average cost per weight across all jobs including all costs for the business, such as material, fabrication, detailing, transportation, placing, and overhead costs." (*Id.* ¶ 37.) Defendants "received monthly financial reporting

---

[4] Plaintiff's exhibits filed in opposition to Defendants' summary judgment motion are attached to the declaration of Michelle Kao, ECF No. 95-1 (amended at ECF No. 238-1). Defendants' exhibits in support of their summary judgment motion are attached to the declaration of Joseph Trujillo, ECF No. 83-1 (amended exhibits at ECF No. 237), and reply declaration of Joseph Trujillo, ECF No. 111-1 (amended exhibits at ECF No. 239).

showing the business' total stacked costs. [They] determined when [they] were bidding below cost by comparing the stacked costs on a per-weight basis to the bid price on a per-weight basis." (*Id.*)

In quarterly meetings, Mr. Davis informed CMC executives that Defendants would be bidding below stacked costs, and "for this reason, at our quarterly meetings we projected losses for [Defendants'] California F&I operations in the upcoming quarter – we projected that we would not be covering our costs." (*Id.* ¶ 38.)

Defendants' internal communications confirm that Defendants expressly did not cover all their costs. For example, they excluded overhead from some of their bids during the relevant time. (Pl.'s Ex. 29 (stating "I would reduce the OH to 0.00%[,]" and responding, "Ahhhhh the days of bidding jobs with barely to no overhead are back."); Ex. 30 (stating "I got real close to PSG on this one. … Revised formulas on the couplers to not add overhead[,]" and later adding, "Tony has had us cut out all of the overhead on a han [*sic*]."); Ex. 31 (instructing to "reduce OH to zero[.]").)

A bid that excludes overhead falls short of the fully allocated cost standard. *See* Cal. Bus. & Prof. Code § 17026. The evidence that Defendants excluded overhead from some of their bids is sufficient to raise a genuine issue regarding below-cost bidding.

Alternatively, the Court rejects Defendants' argument that the stacked cost approach outlined in the Davis Declaration is insufficient as a matter of law. In making the argument, Defendants overstate the holding of *San Francisco Print Media Company v. The Hearst Corporation*, which held that the trial court did not abuse its discretion in excluding an expert cost analysis because the expert lacked sufficient industry knowledge to support his allocation of costs. 44 Cal. App. 4th at 963-95. The expert relied solely on an outdated insider cost analysis prepared to determine the break-even price based on an unknown methodology. *Id*. at 963 ("he relied solely on Sillers's 2010 analysis"); *see also id*. at 959-60, 963 (discussion of the Sillers analysis). Defendants rely on *San Francisco Print Media* to argue that the Davis Declaration is legally inadequate; however, unlike the insider analysis in *San Francisco Print Media*, the stacked-cost approach was used during

the relevant time and explains the methodology Defendants used to determine a point at issue here – whether they were bidding below cost.

Defendants further argue the stacked cost approach is not sufficiently precise for purposes of the UPA. The UPA; however, does not require precision but a reasonable relationship between the cost and the burden the product or service puts on the defendant's overall cost of doing business. CACI 3306. Defendants have not shown that the average stacked cost approach falls short of this standard. Their disagreement with the approach presents an issue of fact for the jury. *See Pan Asia,* 74 Cal. App. 4th at 427, 432.

Defendants also attack Mr. Davis's credibility and dispute Plaintiff's evidence regarding Defendants' desire to injure Plaintiff and drive it out of the market (*see, e.g.,* Davis Decl. ¶¶ 35, 42) by offering contrary evidence of their own. They posit that this case is about nothing more than vigorous competition and that Defendants expected their bids to be profitable. They claim their purpose was not to drive Plaintiff out of the market but only to ensure that CMC could sell as much steel as it was producing. The Davis Declaration provides sufficient evidence to raise a genuine issue regarding Defendants' purpose to injure a competitor. That Defendants dispute Plaintiff's evidence is not sufficient to prevail on summary judgment. The Court does not weigh the evidence or make credibility determinations at this stage, as these functions are reserved to the jury. *Anderson,* 477 U.S. at 255.

Finally, Defendants argue that Plaintiff lacks evidence of injury. Upon producing evidence of Defendants' below-cost sales with the purpose of injuring Plaintiff, Plaintiff has produced sufficient evidence to establish a violation. *See Bay Guardian Co.,* 187 Cal. App. 4th at 456 ("The violation is complete when sales below cost are made with the requisite purpose[.]"). Plaintiff need not prove that Defendants were successful. *See id.* at 457; Cal. Bus. & Prof. Code § 17082.

However, to the extent Plaintiff seeks damages, it must show it was harmed, and that Defendants' conduct was a substantial factor in causing the harm. CACI 3301, 3302.

Although Plaintiff must provide more than "sheer guesswork or speculation," only "reasonable probability [of] the existence of some causal connection between defendant's wrongful act and some loss of the anticipated revenue" is required. *Suburban Mobile Homes, Inc. v. Amfac Communities, Inc.,* 101 Cal. App. 3d 532, 545 (1980).

In this regard, Mr. Davis testified that Defendants' below-cost bidding strategy in fact succeeded in outbidding Plaintiff on numerous projects and taking those projects from Plaintiff. (Davis Decl. ¶ 36.) This is sufficient to show that Plaintiff was harmed, and that Defendants' below-cost bidding was a substantial factor in the harm.

Based on the foregoing, Plaintiff has produced sufficient evidence to raise genuine issues of fact regarding Defendants' below-cost bidding, purpose of injuring a competitor, harm, and causation. The Court therefore need not reach the issue of the sufficiency of Plaintiff's expert evidence.

To the extent Defendants move to exclude Mr. Scherer's and Dr. Raiff's expert opinions in an effort to secure summary judgment, their motion is denied as moot. In the alternative, the motion to exclude is denied because the expert opinions at issue have since been revised. Due to Defendants' piecemeal production of bidding documents after the November 7, 2024, discovery cutoff, expert discovery was reopened, resulting in revision of expert reports. (*See* ECF No. 167, Order Granting Plaintiff's Motion to Shift Expert Costs; *see also* ECF Nos. 171, 173, 174, 187, 193, 202, 208.)

## III. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, including their motion to exclude expert evidence, is denied.

**IT IS SO ORDERED.**

Dated:  September 29, 2025

Hon. M. James Lorenz
United States District Judge