UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC STEEL GROUP,<br><br>                              Plaintiff,<br><br>v.<br><br><br>CMC FABRICATORS, INC. dba CMC REBAR, et al.,<br><br>                              Defendants. | Case No.:  3:22-cv-00892-L-JLB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(e)(1)<br><br>[ECF Nos. 257] |

Before the Court is Plaintiff Pacific Steel Group's ("Plaintiff") Motion for Sanctions.[1]  (ECF No. 257.)  Defendants CMC Steel Fabricators, Inc., CMC Rebar West,

---

[1] Plaintiff's motion requests three different sanctions: (1) an adverse inference instruction or for jurors to be instructed to consider evidence of CMC Rebar's destruction of evidence in making their decision; (2) monetary sanctions; and (3) an order from the Court instructing CMC Rebar to stop its spoliation.  (ECF. No. 257 at 7-8.)  Judge M.

1

and CMC Steel US LLC (collectively "Defendants") oppose the motion (ECF Nos. 261.) For the reasons set forth below, the Court **GRANTS IN PART** the motion for sanctions.

## I.      BACKGROUND

On June 17, 2022, Plaintiff brought suit in San Diego Superior Court of the State of California against Defendants for damages and injunctive relief for violations of the California Unfair Practices Act, California Business and Profession Code sections 17043. 17044 and 17200, et seq. (ECF No. 1-3.[2]) Defendants promptly removed the action to this Court. (ECF No. 1.)

Plaintiff claims that between October 31, 2017, and December 31, 2022, Defendants, who are its competitors in the steel rebar furnishing and installation ("F&I") market, sold F&I services below cost, and those below-cost services functioned as loss leaders in California, injuring competitors and destroying competition. (*See generally,* ECF No. 11.)

Plaintiff initially filed suit in the Northern District of California, *Pacific Steel Group v. Commercial Metals Company, et al.*, United States District Court for the Northern District of California, Case No. 20-cv-07683-HSG. ("Northern District Action".)  In response to Plaintiff filing the Northern District Action, Defendants' in-house counsel circulated a "Litigation Hold Notice" ("Notice") to relevant personnel including "two employees who oversaw the California rebar fabrication business at issue here" (ECF No. 261 at 9) and to "CMC's IT department, represented by Senior Systems Engineer Christy Higgenbotham."[3]  (*Id.*)  Only two of the fourteen subsequently agreed-upon defendant

---

James Lorenz referred the sanctions motion to this Court, "with the exception that any relief requested under number (1) is reserved to the District Judge."  (ECF No. 276 at 2.)

[2] On April 26, 2022, the Northern District of California court, asserting lack of supplemental jurisdiction, declined to rule on Plaintiff's state law claims and dismissed those claims without prejudice.  (ECF No. 257 at 8-9.)

[3] The Litigation Hold Notice itself and the information therein is subject to the Court's Order Granting in Part Motions to Seal.  (ECF No. 319.)

custodians received the Notice.[4]  Upon receipt of the Notice, Ms. Higgenbotham placed a 20-year "hold" on the "emails, Teams/Skype messages, and calendars" of relevant personnel,. or extended existing holds where holds were already in place.  (*Id*. at 9-10; *see also*, ECF No. 261-1, Deposition of Christy Higgenbotham, ("30(b)(6) Depo"), at 123-124.)[5]  No other ESI was specifically preserved.  (ECF No. 257 at 10; *see also* 30(b)(6) Depo at 201-203.)[6]

On October 10, 2025, Plaintiff filed the instant Motion for Sanctions against Defendants for failure to preserve potentially relevant information contained in text messages on company issued cellphones, stored on laptop computers, and backed up on the associated OneDrive of Defendants' departing employees.  (ECF No. 257.)  Plaintiff seeks cost-shifting sanctions for the costs and attorney fees Plaintiff incurred: (1) in bringing its earlier Motion to compel depositions under Federal Rules of Civil Procedure Rule 30 (b)(6); (2) for taking the court-ordered depositions; and (3) for bringing this Motion for Sanctions.  (*Id*. at 7-8.)  Additionally, Plaintiff requests the Court order Defendants to: "(1) stop its spoliation and take all appropriate steps to preserve potentially relevant evidence; (2) send a litigation hold to each of the agreed-upon custodians remaining at CMC Rebar tailored to the claims at issue in this litigation; and (3) send a litigation hold to its "Services Delivery" group responsible for "wiping" the laptops and devices of departing CMC Rebar employees to stop any further destruction."  (*Id*. at 8.)

---

[4] The "agreed-upon CMC Rebar custodians" referenced by Plaintiff were "agreed-upon" by the parties later in the discovery process as likely to possess relevant information for purposes of discovery searches and not at the time the Litigation Hold Notice was sent by Defendants.

[5] Citations to the 30(b)(6) Depo are to the full transcript, filed on the docket at ECF No. 261-1, at 53-228.

[6] Defendants point out that certain other ESI is stored in common databases on central servers that are preserved as a matter of course and not subject to autodelete functions.  (ECF No. 261 at 10-11; *see also*, 30(b)(6) Depo. at 85-87; Deposition of Adam Raines, ECF No. 261-1 at 356-358.)

## II.    PARTIES' POSITIONS

Here, Plaintiff seeks sanctions for Defendants' "conscious disregard of its preservation obligations." Specifically, it claims Defendants' failure to send a litigation hold to the appropriate custodians and the Services Delivery group rendered the hold effectively "meaningless." (ECF No. 257 at 9.) Relatedly, Plaintiff contends Defendants failed to take basic preservation steps, namely: Defendants took no steps to preserve the documents of the other agreed-upon custodians who did not receive the November 2, 2020, Notice; and Defendants intentionally continued their practice of destroying all laptops, OneDrive information, and cellphones of departing employees. (*Id.* at 10.) Additionally, Plaintiff argues that Defendants destroyed critical text messages from agreed-upon custodians before they could be requested in discovery, and then Defendants attempted to conceal their destruction. (*Id.* at 11.)

In opposition, Defendants counter that, following their standard practices, reasonable steps were taken to preserve relevant information, and they have "fulfilled [their] obligations to preserve, search for, and produce relevant and responsive information." (ECF No. 261 at 12.) And Defendants maintain that they have always been candid and transparent about their preservation efforts. (*Id.* at 14.) As to the destruction of the laptop, cellphone, and OneDrive information of departing employees, Defendants argue that they had no reason to believe that the texts and local laptop information of former employees contained relevant information and therefore had no duty to preserve this information. (*Id.* at 18.) Further, Defendants contend that the Notice was adequate to protect any relevant information subject to automatic deletion. Finally, Defendants argue that even if the Notice had been sent to more custodians or to the Services Delivery group, it would not have mattered because it would not have altered Defendants' practice of "wiping" the cell phones, laptops, and OneDrive backups of departing employees because those devices should not contain any business information relevant to this litigation. "In other words, [Defendants'] policy is to preserve the repositories where relevant business

3:22-cv-00892-L-JLB

information resides and not preserve the repositories that employees are unauthorized to use for business purposes, and it followed its policy here." (*Id.* at 12.)

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(e), a party may be sanctioned if (1) Electronically Stored Information ("ESI") "that should have been preserved in the anticipation or conduct of litigation is lost," (2) because "a party failed to take reasonable steps to preserve it," and (3) the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If these three prerequisites are satisfied, the court then performs additional analysis. If a court finds that the loss of ESI prejudiced another party, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). And, if the court finds that the spoiling party "acted with the intent to deprive another party of the information's use in the litigation" the court may "presume that the lost information was unfavorable to the party," give the jury an adverse inference instruction or terminate the litigation. Fed. R. Civ. P. 37(e)(2).

## IV.    DISCUSSION

The Court will begin its analysis by assessing if the required Rule 37(e) prerequisites have been met before turning to whether imposition of sanctions is appropriate.

### A.    *Defendants had a Duty to Preserve Laptop, Cellphone and OneDrive Information of Departing Employees*

Whether information "should have been preserved" is determined at the time the duty to preserve attaches, which is "when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Scalia v. KP Poultry, Inc.*, No. CV 19-3546-TJH (PLAx), 2020 WL 6694315, at *4 (C.D. Cal. Nov. 6, 2020). The duty to preserve extends to those employees likely to have relevant information. *Apple v. Samsung Elecs Co.*, 881 F. Supp. 2d. 1132, 1137 (N.D. Cal July 12, 2012). A "party does not [spoliate evidence] when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business." *Meza-Perez v. Sbarro LLC*, No. 23-15702, 2024 WL 4532903, at *3 (9th Cir. Oct. 21, 2024). *See also*

3:22-cv-00892-L-JLB

*Zunum Aero, Inc. v. Boeing Co.*, Case No. C21-0896JLR, 2025 WL 664540 (W.D. Wash. Feb. 7, 2024) (no duty to preserve where no evidence nonmovant should have known ESI was relevant). However, routine destruction amounts to spoliation when a party "had some notice that the documents were potentially relevant to the litigation before they were destroyed." *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002).

Here, the parties do not dispute that the laptop, cellphone and OneDrive information at issue qualifies as ESI and is subject to the provisions of Rule 37(e). The parties also agree that the duty to preserve evidence arose around the time the Northern District Action began, on October 30, 2020. However, they take opposing positions regarding the extent of Defendants' duty to preserve. (*Compare* ECF No. 257 *with* ECF No. 261.)

Plaintiff contends that from the outset of this litigation, Defendants had a duty to identify and subsequently preserve the documents of relevant custodians. (ECF No. 269 at 4.) It is Plaintiff's position that "[i]t should have been readily apparent to [Defendants] that its relevant custodians included at least the twenty-seven 'California F&I Sales Personnel' it identified." *Id.* at 5.

Countering, Defendants claim they "had no reason to believe that the former employees' texts or local laptop information had relevant information, and thus had no duty to preserve them." (ECF No. 261 at 17.) To support this position, Defendants rely on their Mobile Device Management ("MDM") system and employee policy requiring employees to save and store all business work and documents on central servers, not on their laptops, and barring employees from texting about substantive business matters. (*Id.* at 19-22.) They further rely on a presentation slide dated August 16, 2012,[7] directing

---

[7] Defendants assert that, even though the slide is dated August 16, 2012, it was part of a 2019 presentation continued to be used in subsequent years. (Id. at 10 n. 8.) However, the Court notes that the slide states, "IT will coordinate with Legal over the next several months to develop a tool set, rule set and training to support the Records Management policy." *Id*. at 262. Defendants have not presented the Court with, nor relied on, any such

employees to store files on the CMC network storage, not on their local hard drives. (*Id.* at 10, 262.) Further, Defendants maintain that they had no reason to believe employees were not complying with this policy. (*Id.*) From this conclusion, Defendants extrapolate that no business information would have been discussed in cellphone text messages or saved on laptops or corresponding OneDrive backup files. (*Id.*) Defendants, therefore, claim that Plaintiff has failed to demonstrate that "the phones and laptops that were recycled according to [Defendants'] standard policies were more likely than not to have potentially relevant evidence, or that [Defendants] had reason to believe as much and therefore should have preserved them." (*Id.* at 22.) Thus, Defendants claim they have produced responsive documents from emails, other Microsoft account files, and centrally maintained servers of all custodians.

The Court is not persuaded by Defendants' reliance on the MDM system and employee policy to excuse their duty to preserve. A review of the employee handbook references how employees should access company information. (*See* ECF No. 261-1 at 338). Messages sent through the MDM are preserved whereas text messages are not managed by the MDM and are therefore not preserved[8]. (ECF No. 261 at 11-12.) Neither are any steps taken to preserve company-issued cellphones[9]. Aside from the employee handbook and a presentation slide provided to the Court without meaningful context, Defendants have not produced any evidence identifying other ways in which employees

---

tool set, rule set, or training, which suggests that perhaps they were never developed or rolled out.

[8] 30(b)(6) Depo: Q: "As you sit here today, are you aware of any steps that CMC has taken to preserve the text messages of its current California F&I personnel?" A: "Not so far as I am aware." (ECF No. 261-1 at 178.) Q: "But what steps does CMC take to preserve the text messages on the personal cellphones of CMC or CMC Rebar personnel when they leave the firm . . ..?" A: "We don't preserve text messages." (*Id.* at 223)

[9] 30(b)(6) Depo: Q: "Did CMC take any steps to preserve the cellphones of any of those former California F&I personnel . . ..?" A: "[N]ot to my knowledge." (ECF No. 261-1 at 167.)

7

3:22-cv-00892-L-JLB

are instructed or required to use the MDM system for all business communications or how the Defendants ensure the policy is followed.

Defendants' contention that employees did not use their cellphones to discuss business matters is not supported by the evidence or common experience. As Plaintiff has noted (ECF No. 257 at 10-11; ECF No. 269 at 5-6), the text messages submitted within the briefing papers suggest employees' cellphones could contain text messages between Defendants' California F&I employees about business matters such as bidding, pricing, and actions that form the basis of the allegations of noncompetitive and illegal behavior in the current action. Although Plaintiff relies on texts evidencing predatory practices sent from the personal cell phones of custodians, Plaintiff also produced evidence of other employees communicating about business matters more generally via text on their work cellphones. The existence of such texts indicates that it was not reasonable for Defendant to assume that custodians were not using their work phones to exchange work-related messages. Indeed, Defendants' 30(b)(6) witness testified that there is no policy prohibiting texting.[10]

As Defendants did not prohibit texting about business matters, and did not, apparently, make any effort to inquire or assess whether business matters were being communicated by text, Defendants should have ensured that texts from work cell phones were preserved.

As to the work laptops, Defendants' argument that their locating and producing all but a de minimis number of relevant pricing templates serves as confirmation that the unpreserved laptops did not have any relevant information, the Court is not persuaded. *See*

---

[10] 30(b)(6) Depo Q: "[I]f I am a CMC Rebar F&I personnel in California, am I allowed to use my CMC-issued phone to text about work, my job?" A: "Well, we don't prevent people from using text, we don't. We [] do not support working outside of company-sanctioned business apps such as Microsoft Office; but no. we don't prevent texting." (ECF No. 261-1 at 161.)

3:22-cv-00892-L-JLB

*Jones v. Riot Hosp. Grp.* 95 F.4th 730, 736 (9th Cir. 2024) ("production of some evidence does not excuse destruction of other relevant evidence").  Rather, as Defendants have conceded, it is possible for some pricing templates to be stored on personnel laptops.  *See* 257-19 at 1; *see also* ECF No. 115 at 1; ECF No. 115-1.  This concession, along with the seemingly weakly communicated and enforced policies discouraging maintaining work-related documents on local computer drives, supports the conclusion that it was not reasonable for Defendants to assume that custodians were not saving business related documents, including pricing templates, on their laptops.  Indeed, in light of the importance of the templates to Plaintiff's claims and its experts reliance on them to opine whether Defendants submitted below-cost bids, the issue surrounding the steps Defendants did/did not take to look for the missing pricing templates and their procedures regarding wiping laptops ultimately led Judge Butcher to grant Plaintiff's request for 30(b)(6) deposition testimony on the topic.

In sum, the Court agrees with Plaintiff that the ESI in question should have been preserved.  Defendants had a duty to evaluate which employees were key players at the outset of the litigation and take reasonable steps to preserve their potentially relevant ESI.  Defendants also had control over the returned cellphones and laptops of departing employees and should not have actively wiped them and removed the data.  As noted by Plaintiff, Defendant CMC is a sophisticated public company that is not a stranger to litigation or their litigation hold obligations.

### B. Defendants Failed to Take Reasonable Steps to Preserve

Once litigation is anticipated or commenced, reasonable steps should be taken to preserve potentially relevant information, including ESI.  *Estate of Schuck v. Cnty. of San Diego*, Case No. 3:23-cv-00785-DMS-AHG, 2025 WL 2180987, at *7 (S.D. Cal. Aug. 1, 2025).  Reasonable steps include requiring a party to "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation."  *Colonies Partners, L.P. v Cnty. of San Bernardino,* No. 5:18-420, 2020 WL 1496444, at *8 (C.D. Cal. Feb. 7, 2010) (citing *Apple Inc. v. Samsung Elecs. Co.,* 888 F.

3:22-cv-00892-L-JLB

Supp. 2d 976, 991 (N.D. Cal. 2012)). The failure to prevent destruction of information, such as by backing up phones to the cloud or disabling automatic deletion functions, may amount to spoliation if the information lost is likely to be relevant. *Youngevity Int'l v. Smith*, Case No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687, at *2 (S.D. Cal. July 28, 2020).

Plaintiff identifies two ways in which Defendants failed to take reasonable steps to preserve this ESI: (1) not affirmatively pausing the policy to routinely "wipe and recycle" the cellphones and laptops of former employees and to destroy any OneDrive back-ups, and (2) failing to send the Notice to all likely custodians of relevant ESI. (ECF No. 257 at 9-11, 15, 16.) Specifically, Plaintiff argues that, in response to the litigation hold, Defendants only put on hold the mailboxes of 14 custodians; took no steps to preserve the documents of other custodians who were subsequently agreed upon by the parties; and failed to preserve documents in common repositories, as evidenced by the 30(b)(6) witness deposition. (ECF No. 257 at 10.) Plaintiff also highlights that Defendants' Rule 30(b)(6) witness testimony revealed that Defendants routinely destroyed ESI on company-issued laptops and the associated OneDrive back-up information of departing employees, pointing out that eight of the fourteen subsequently agreed-upon custodians left the company after Defendants had notice of the need to preserve evidence.[11]

Pursuant to their "standard practice" Defendants "wiped and recycled" departing employees cellphones and laptops so that these devices could be "repurposed."[12]

---

[11] "Our policy is never to maintain laptop – laptops and OneDrive information because we don't expect to have business information on them . . . . (30(b)(6) Depo at 142.) Q: "[W]ere the laptops of these 12 California F&I personnel also wiped and recycled?" A: "Per our normal practices, I have no reason to believe they weren't." (*Id*.); *see also* ECF No. 257-4 at 2.

[12] The 30(b)(6) witness testified that the cellphones of departing employees were routinely "wiped and recycled" so that their contents were destroyed: "We don't have a policy of preserving cellphones, so cellphones get turned in, and they get repurposed." (ECF No. 261-1 at 159.)

3:22-cv-00892-L-JLB

Defendants' 30(b)(6) witness was unable to point to any written policy detailing this practice or identify a precise timeframe when the repurposing occurred, estimating that the repurposed cellphones and laptops go back into service within six months of the former employee's departure. (*See* ECF No. 261-1 at 83-85, 131-132.)

By providing examples of former employee text messages (ECF Nos. 257-7, 269-9, 322-1), the Court finds that Plaintiff has met its burden to show that the information contained on former employees' cellphones may have contained substantive business information regarding Defendants' California F&I bidding and pricing that is relevant to this action. As Plaintiff suggests, it is quite possible that other company employees also sent relevant texts regarding Defendants' business practices. Rather than continue its practice of wiping and recycling company cellphones, Defendants should have paused this practice. If they had done so, potentially relevant texts, including those from now deceased former employee Steven Davis[13], would have been preserved. Similarly, Plaintiff has met its burden to show that the local storage drives of employee laptops may have contained relevant information. This conclusion is supported by Defendants' own admission that it found eight missing pricing templates on one California F&I salesperson's laptop. (ECF No. 158 at 8.)[14].

---

[13] Davis is a key player in the events giving rise to this litigation who left Defendants' employment 70-days before the Northern California Action was filed.

[14] The parties have been involved in a discovery dispute relating to Defendants' production of "pricing templates" which are industry standard pricing forms supporting F&I bids. For Plaintiff, these templates are key to its claims as the templates are relied upon by its experts to opine on the topic of Defendants' submission of below-cost bids. (*See, e.g.*, Plaintiff's Motion to Shift Expert Costs, ECF No. 101 ("Cost Shifting Motion,"); and Order thereon, ECF No. 167.) In the Cost Shifting Motion, Plaintiff argued that, based on other documents that were produced, Defendants' production of pricing templates was deficient and that some pricing templates were missing. (ECF No. 101 at 8.) At the February 28, 2025, hearing on the Cost Shifting Motion, Defendants represented to the Court that if they were ordered to search individual laptops for the missing pricing templates, the search would include 20 or more laptops. (ECF No. 257-11 at 11.)

3:22-cv-00892-L-JLB

As to Defendants' failure to send the Notice to all likely custodians of relevant ESI, the Court agrees with Plaintiff that, at a minimum, Defendants were required to notify all the subsequently agreed-upon custodians of the duty to preserve. *See Apple,* 881 F. Supp. 2d at 1137 ("the duty to preserve extends to those employees likely to have relevant information"). Although the agreed-upon list of custodians was settled after the initial Notice, ECF No. 320, fn 4, Defendants should have independently identified these custodians and included them on the Notice. Defendants' failure to do so substantially reduced the value and effectiveness of the Notice. *See Ramos v. Swatzell,* No. EDCV-12-1089-BRO, SPx, 2017 WL 2857523, at *6 (C.D. Cal. June 5, 2017) (finding spoliation and ordering an adverse inference, noting that "[a]lthough [Defendant] properly imposed a litigation hold, it failed to take appropriate steps to carry it out. . . . By failing to notify the appropriate records personnel of the hold, the hold was meaningless.").

Based on the foregoing, the Court concludes that Defendants should have suspended their existing policies and practices of routinely deleting and/or destroying the ESI on company issued cellphones and laptops and corresponding OneDrive information. *See Estate of Schuck,* 2025 WL 2180987 at *7; *Gonzalez,* 2024 WL 589147 at *3; *Deerpoint Grp., Inc.* v. *Agrigenis*, LLC, No. 1:18-cv-00536-AWI-BAM, 2022 WL 16551632, at *11. (E.D. Cal. Oct. 31, 2022) ("Once a duty attaches a party mist ensure all policies related to deleting or destroying files are suspended."). Defendants' failure to do so resulted in the destruction of potentially relevant evidence. Such destruction could have been avoided relatively easily by backing up the repurposed cellphones and laptops before they were wiped and recycled. *See Paisley Park Enters., Inc. v. Boxill,* 330 F.R.D. 226, 233 (D. Minn. 2019) (failure to take advantage of relatively simple options to ensure [] text messages were backed up to cloud storage" is "sufficient to show that Defendants acted unreasonably."). Moreover, additional possibly relevant ESI could have been preserved if Defendants had sent the Notice to a larger group of custodians. Thus, the Court finds that Defendants failed to take reasonable steps to preserve the contents of the cellphones, laptops and OneDrive.

### C.      The Information Contained on the Cellphones, Laptops and OneDrive Cannot be Restored or Replaced through Additional Discovery.

The final prerequisite for Rule 37(e) sanctions is that the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Sanctions may not be awarded if the ESI has been lost but "the very same information is recoverable from a third party or from a back-up source." *Sec. Alarm Fin. Enters., v. Alarm Prot. Tech., LLC,* No. 3:13-cv-001012-SLG, 2016 WL 7115911, at 4 (D. Alaska Dec. 6 ,2016).

Plaintiff contends, and Defendants' do not dispute, that the ESI at issue cannot be restored or replaced through additional discovery. Indeed, Defendants' 30(b)(6) witness offered testimony that the information stored locally on former employee cellphones, laptops that have been "wiped" is lost and cannot be restored. (30(b)(6) Depo, at 1421-143.) Once a former employee's laptop was "wiped" the OneDrive backups were also automatically deleted or "orphaned." *Id.* Additionally, when asked, "Were the cellphones of the 12 former California F&I personnel that you testified about that were recycled, is there a way to restore those text messages," she responded, "Not that I know of." (30(b)(6) Depo at 171-172.)

As no party has suggested that the lost information contained on the wiped cellphones, laptops, or OneCloud backup is available from any other source, the Court finds that this ESI cannot be restored or replaced through discovery.

### D.      Plaintiff was Prejudiced by the Loss of the Information

As set forth above, the Court has concluded that the prerequisites to sanctions under Rule 37(e) are satisfied. The Court must next determine whether the additional requirements for the imposition of specific sanctions under Rule 37(e)(1) have been fulfilled.[15]

---

[15] The Court limits its analysis to 37(e)(1) sanctions as the District Judge has reserved whether an adverse instruction should issue under Rule 37(e)(2).

3:22-cv-00892-L-JLB

For this Court to award sanctions, it must find Plaintiff was prejudiced by the loss of information. *See* Fed. R. Civ. P. 37(e)(1). "Once spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *3D Systems, Inc. v. Wynne*, No. 21-cv-1141-AGS-DDL, 2024 WL 3896454, at 3 (S.D. Cal. Aug. 21, 2024); *see also see also Youngevity Int'l,* 2020 WL 7048687 at 3 ("Although Federal Rule of Civil Procedure 37(e) does not place the burden of proving or disproving prejudice on either party, if spoliation is proven, the burden shifts to the spoliating party to prove the lost information is not prejudicial.").

Here, the record demonstrates that Plaintiff was prejudiced by the deletion of information on the cellphones, laptops and OneCloud backup at issue. While it is not possible to determine the exact content of the deleted information, the removed ESI was potential evidence Plaintiff could have used to support its claims. *See Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 623 (N.D. Ill. 2022) ("Prejudice under Rule 37(e) includes the thwarting of a party's ability to obtain the evidence it needs for its case."). Given that it is impossible to determine precisely what the destroyed ESI contained or the impact the deleted evidence may have had on Plaintiff's case, the court is not persuaded by Defendants' argument that the loss of information is not prejudicial. (ECF No. 261 at 23-25). Indeed, Defendants' concession that it is possible that some pricing templates were stored on personnel laptops, and the fact that it found eight missing pricing templates on one laptop, supports the opposite conclusion. The importance of Defendants' pricing templates to Plaintiff's claims and its experts' opinions regarding below-cost bids is not in dispute. This is further underscored by Judge Butcher: (1) granting Plaintiff's request for 30(b)(6) deposition testimony on the topic; and (2) awarding cost-shifting sanctions against Defendants for the cost of Plaintiff's experts revising their reports to incorporate the templates Defendants have produced since October 2024.

3:22-cv-00892-L-JLB

Thus, the Court finds that corrective measures are appropriate in this instance, but such measures must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

### E.    Appropriate Remedies

While Plaintiff seeks three different sanctions, per the directive from the district judge, only two are currently before this Court, namely: Plaintiff's request for monetary sanctions; and an order directing Defendants to cease spoliating evidence and requiring them to take reasonable steps to preserve potentially relevant information.

Given the Court's determination that Defendants spoliated evidence that warrants sanctions under Rule 37(e)(1), the Court finds that Plaintiff "is entitled to an award of reasonable attorneys' fees and costs that [it] incurred in preparing the briefings related to the sanctions motion." *Porter v. City & Cnty. of S.F.,* No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *5 (N.D. Cal. Sept. 5, 2018). In addition, the Court finds that Defendants' lack of forthrightness regarding its routine destruction of ESI necessitated the taking of two 30(b)(6) depositions. This was a situation that could have been avoided if Defendants had simply paused their practice of deleting the contents of repurposed laptops and cellphones and searched the backups for potentially relevant evidence. Accordingly, cost shifting sanctions to cover the costs of preparing and conducting these depositions are also appropriate. *See Youngevity Int'l*, 2021 WL 2559456 at 4 (ordering spoliating party to pay the fees related to the depositions of witnesses regarding the spoliator's failure to preserve). Further, the Court orders Defendants to cease spoliation, as set forth more specifically below.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's motion for sanctions (ECF No. 257) and **ORDERS** as follows:

1.    Plaintiff shall recover its reasonable attorneys' fees and costs incurred bringing this sanctions motion and taking the two 30(b)(6) depositions.

15

3:22-cv-00892-L-JLB

a.      Plaintiff has up to and including **May 19, 2026**, to share with the Defendants the amount of fees and costs it seeks to recover along with supporting documentation.

b.      The parties shall meet and confer on the reasonable costs and fees incurred by Plaintiff in moving for sanctions and taking the two 30(b)(6) depositions by **June 2, 2026.**

c.      By **June 2, 2026**, the parties are to place a joint call to chambers advising the Court if the parties have reached an agreement with respect to the fees and costs.  If the parties have reached an agreement, the agreed-upon amount shall be paid on or before **June 16, 2026**.

d.      If the parties do not reach an agreement, by **June 16, 2026**, Plaintiff shall file a declaration attaching sufficient evidence to show the hourly rates of their attorneys and whether those hourly rates are reasonable rates in the Southern District of California for work of similar complexity by attorneys with comparable skill and reputation.  As part of any such declaration, Plaintiff must include any appropriate documentation substantiating the actual fees and costs expended in filing the motion for sanctions as well as the fees and costs expended in preparing the to-be-filed declaration and any exhibits thereto.

e.      Defendants shall file any opposition to the imposition of a monetary award on or before **June 30, 2026**.

2.   Defendants shall send a Litigation Hold Notice to each of the agreed-upon custodians still working for Defendants tailored to the claims at issue in this litigation.

3.   Defendants shall send a litigation hold notice to the Services Delivery group tailored to the claims at issue in this litigation.

3:22-cv-00892-L-JLB

4.    For any custodians of information relevant to this litigation, Defendants shall halt the routine wiping of cellphones, laptops, and OneDrive backups upon the custodian's departure.

**IT IS SO ORDERED.**

Dated:  May 15, 2026

_Jill Burkhardt_
Hon. Jill L. Burkhardt
United States Magistrate Judge

3:22-cv-00892-L-JLB